## CHAMBERLAIN V. COLLINSON ET AL.

1. **Principal and Agent**: LEASE: RATIFICATION OF. Where one who was in the employ of a mining company in a subordinate capacity leased the right to mine in a certain range to a party who paid rent therefor to the company, and the company received the same without objection, its conduct was held to amount to a ratification of the unauthorized act of its agent.

2. ———: JUDICIAL SALE: MINES AND MINING. Where the leased property was sold on execution, pending the lease, the execution purchaser was charged with constructive notice of the lessee's possession unless the latter had ceased to work the premises in a miner-like way.

3. ———: ———: ———. An application by the lessee to the purchaser, after threats by the latter that he would be disturbed in his possession, for permission to work a part of the range covered by his lease, will not deprive the lessee of the right to work all of the range embraced in his original contract with the lessor.

4. ———: ———: MEASURE OF DAMAGES. The execution purchaser having mined a part of the range embraced in the lease, the lessor is entitled to recover from him the value of the mineral he has taken out, with interest thereon from the time when the mineral was mined and sold, diminished by the amount of the rent due under the lease and the reasonable cost of mining.

*Appeal from Dubuque District Court.*

THURSDAY, MARCH 22.

THE plaintiff avers in his petition, in substance, that he is the owner of the mining right on what is known as the Level Range through mineral lot 268, in Julien township, Dubuque county, Iowa, and has the exclusive right to work on said range, and dig and take away mineral from the same; that the defendants never had any right to work on said range, except along and in the cap rock; and the said right to work in the cap rock they abandoned, and for more than six months ceased all work and labor therein, whereby their right to take mineral out of said cap rock was forfeited; that the defendants have wrongfully taken possession of the whole of said range, and are about to proceed to work it below the cap rock; that said defendants are insolvent, and that the plaintiff will

suffer irreparable damage by the acts of the defendants unless they are restrained. The petition prays for an injunction.

The defendants aver that they have the exclusive right to mine in said range; that they have been lessees of such right for more than four years prior to the commencement of the suit; that they worked the same continuously until interrupted by the plaintiff, and expended in labor and materials about $9,000; that after they had discovered large quantities of mineral the plaintiff took possession of the range and took out said mineral. The defendants, by way of cross-petition, ask judgment for the value of the same. Decree for plaintiff. Defendants appeal.

*Pollock & Shields*, for appellants.

*H. B. Fouke*, for appellee.

ADAMS, J.—The defendants claim by lease from the Dubuque Level and Lead Mining Company. The plaintiff claims by purchase at an execution sale under a judgment against said company. The defendants claim the right to mine from what is called the grave yard shaft to the Carter pond shaft, a distance of about 1400 feet.

The plaintiff denies such right, and claims that at most they acquired the right to mine only from the said grave yard shaft to the gin shaft, a distance of about 500 feet.

The first question to be determined is: Did the defendants acquire any right from said company, and if so, what was the extent of the same?

Whatever rights were acquired, if any, were acquired through one H. W. Clark, who, previous to the time of the alleged leasing, if not at the time, was foreman of said company in running a water level. He also, in many respects, seems to have been the superintending agent of the company, but the evidence fails to satisfy us that he was authorized to grant the right to mine said range.

1. PRINCIPAL and agent: lease: ratification of.

That he undertook to grant such right is clearly proven. The defendant Collinson says: " Charles Stevenson and Clark

leased and let me have the Level range exclusively from the Carter pond shaft to the grave yard shaft." In this he is substantially corroborated by said Stevenson, who at the time of the transaction was in the employment of the Level Company with Clark. He says: "Clark and I went over to the grave yard shaft and found Collinson there. Clark let Collinson and his associates the privilege of going into the grave yard shaft and working out the mineral from there to what is known as the Carter pond shaft. * * * The ground let was the Level range from the grave yard shaft west to the Carter pond shaft. Collinson was to work the whole distance there, anywhere on that ground; no restriction as to place. * * * I consulted with Clark about that, but had nothing to say about it at the shaft; I let Clark do the talking."

It seems to be equally well established that under the said leasing Collinson and his associates entered immediately upon and worked the said range, and struck mineral and paid rent to the company, and no objection was made by the company, so far as the record shows. We must hold, therefore, that Clark's acts, in leasing to the defendants the right to mine in the range, were ratified by the company, and that defendants' right extended from the grave yard shaft to the Carter pond shaft, and included the right to mine in the bottom of the drift as well as in the cap rock.

About two years after the defendants commenced mining the interest of the said company in the premises was sold on execution sale to the plaintiff, who had no actual notice of defendants' claim. Whether the defendants had such possession of the premises at that time as was sufficient to impart constructive notice of their claim depends upon whether they had ceased to work the premises in a miner-like way.

**2. ———: judicial sale: mines and mining.**

On this point the evidence is somewhat conflicting. Collinson says: "I worked that range from the time I got it in the spring of 1868 to the spring of 1873 constantly and continuously whenever my part of the range could be worked, first with Hurd and John and William Luke, and after Hurd

quit myself and my four boys kept on; when the water got up in the crevice so we could not work, we would sometimes work elsewhere.'' In this he is corroborated by William Luke, who testified that they always kept possession of the diggings, and that their picks, shovels, bars, tubs, ropes and windlasses were kept there. John Luke testified that they worked on the range all the time when not prevented by water until the spring of 1873, and had two windlasses all the time at the diggings. This testimony is not to our mind overcome. Such possession would constitute constructive notice, and the rights of the miners would be protected under it. The same evidence shows that the defendants did not abandon the premises at any time.

It appears, however, that after the sale to the plaintiff the defendants obtained permission of the plaintiff's agent to work

3. ——: ——: in the cap rock. It is claimed that this fact, if not —— of itself an abandonment of their right to work in the bottom of the drift, should be regarded as an admission that they had no right to work there. The acts and words of the defendants in this respect must be viewed in relation to the circumstances in which they were situated. After the plaintiff bought, one Baxter told the defendant Collinson that he had orders to stop him, and that he must take his tools out, and denied that Clark had any authority in the matter. The evidence tends to show that the defendants were disturbed by the attempts which were made to stop their work, and while so disturbed they obtained leave from the plaintiff to work in the cap rock. But if they already had the right, as we hold, to work both in the cap rock and bottom of the drift, that right, we think, was not affected by obtaining plaintiff's consent to work in the cap rock; the occasion of their doing so being that he was threatening to stop their whole work.

The evidence shows that the plaintiff took out 77,880 pounds of mineral, worth $40 per thousand, and 2,220 pounds worth

4. ——: ——: $42 per thousand, amounting to $3,248.40. From measure of damages. this should be deducted fifty per cent for rent, the amount which defendants were paying; also, such other sum as would have been to the defendants the reasonable cost of

raising the same. The defendants should have judgment for the balance. Upon the question of cost of raising the mineral there is no satisfactory evidence, and the case must be remanded for the purpose of taking testimony in relation to it.

REVERSED.

### ON REHEARING.

The defendants claim that this court erred in not allowing interest upon the money due them from the plaintiff; and, also, in not allowing them the full value of the mineral when raised, less rents.

As to interest, there is nothing said in the opinion, nor was our attention called to it by counsel in the first presentation of the case; but the defendants are entitled to recover as damages the amount set forth in the opinion, and in addition an amount equivalent to interest thereon, to be computed from the time the damages accrued. This was not, we think, when the plaintiff took possession, but when the mineral, which the defendants had a right to mine, was mined and sold by the plaintiff. If the evidence is insufficient, as it appears to us to be, to show fully the different dates from which computations should be made, further testimony should be taken in relation thereto.

Upon the question as to whether there should be deducted from the value of the mineral, when raised, the reasonable cost of raising it, we see no reason to change the views which we have already expressed. There are, to be sure, cases in which it has been held that a trespasser cannot be allowed compensation for enhancing the value of the property which is the subject of the trespass. In *Stewart v. Phelps*, 39 Iowa, 18, the defendant had wrongfully levied upon a crop of corn, and caused it to be husked and cribbed, whereby he enhanced its value, and he claimed that he should be allowed for such enhanced value. DAY, J., said, however, in delivering the opinion of the court: "If the levy was not authorized, and amounted to a wrongful conversion, the defendant became a trespasser, and he is not entitled to compensation for husking

and cribbing, notwithstanding those acts may have increased the value of the property," citing *Baker v. Wheeler & Martin*, 8 Wend., 505, and *Silsbury et al. v. McCoon et al.*, 3 Com., 579.

But in the case at bar the mineral raised by the plaintiff was taken from his own ground. He is not seeking an allowance for value added by him to the defendants' property. The defendants are seeking to recover, not the mineral, but damages. Now, the damages which they have sustained arose from the fact of their being deprived of the full benefit of their lease. They have been prevented from mining mineral which they had a right to mine. The question then is, what is the value of the right of which they have been deprived? It is, evidently, the value of the mineral unmined, or what is the same thing, the value of it mined less the reasonable cost of mining it. It was so held in *Stockbridge Iron Company v. Stove Iron Works*, 102 Mass., 80, and in *Mayo v. Tappan*, 23 Cal., 306. In *Forsyth v. Wells*, 41 Penn. St., 291, it was also held that the measure of damages was the value of the ore in the ground, but the rule was qualified by the condition that the defendant is not guilty of a willful wrong or gross neglect. In the case at bar we think that Chamberlain was not guilty of a willful wrong or gross neglect. Whatever rights the defendants acquired in the range, so far as mining in the bottom of the range was concerned, were acquired from the Dubuque Level and Lead Mining Co., from whom the plaintiff derived title. They had only a verbal lease and the evidence in regard to it was conflicting.

After the rehearing was granted upon the defendants' petition the plaintiff applied for a rehearing. He claims that receipt of rent by the plaintiff should not be regarded as a ratification of the leasing, because it does not appear that the plaintiff received the rent "with full knowledge of the portion of the range from which the mineral was raised."

The ratification, as we hold, took place by reason of the receipt of rent by the company from whom the plaintiff's title was derived. As to whether the company knew from what portion of the range the mineral was raised does not

appear, nor do we think it material. The evidence shows that the defendants expended a large amount of money and labor in its mining in various parts of the range, and in reaching and uncovering the very mineral in controversy. In expending the labor and money, we think that they were justified in doing so upon the assumption, from the time that the company began to receive rent, that Clark was authorized to make the contract under which the rent was paid.

The petition for a rehearing on the part of the plaintiff must be overruled. The opinion will be adhered to, with the modification necessary to correct the oversight in regard to the allowance of interest as a part of the damages.