ALICE J. BOWMAN, Appellant, v. SWANWOOD COAL COMPANY et al., Appellees.

ADELINE GRACE JONES, Appellant, v. SWANWOOD COAL COMPANY et al., Appellees.

**ESTOPPEL: Grounds—Knowledge and Acceptance of Benefits.** Beneficiaries of a trust will not be heard in equity to assert the invalidity of a lease entered into by their trustee, when they (1) had full general knowledge thereof, (2) long acquiesced therein, (3) accepted and retained the rentals arising from the lease, and (4) knew at all times that the lessee was relying thereon at great expense.

**Headnote 1:** 21 C. J. pp. 1210, 1216.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

MARCH 9, 1926.

REHEARING DENIED JUNE 21, 1926.

ACTION in equity for an accounting, and to restrain the use by the defendant coal companies of certain entries under plaintiffs' land for the removal of coal from adjoining premises. The facts are fully stated in the opinion. The petition of plaintiff and the cross-petition of the defendants were dismissed, and they appeal.—*Affirmed.*

*Clark & Byers,* for plaintiffs, appellants.

*Stipp, Perry, Bannister & Starzinger,* for Norwood-White Coal Company, appellee.

*John L. Gillespie,* for Swanwood Coal Co., appellee.

*Henry H. Griffiths,* for cross-petitioners, appellants.

STEVENS, J.—R. W. Marquis, long a resident and successful business man of Polk County, died intestate in February, 1909, survived by two daughters, the plaintiffs Alice J. Bowman and Adeline Grace Jones, and three sons, named as defendants: Richard Hayden Marquis, Walter Courtney Marquis, and Clifford Sinclair Marquis.

On or about November 22, 1905, R. W. Marquis, who was then a widower, conveyed the title to all his property to the defendants Walter Courtney and Clifford Sinclair Marquis, as trustees, in trust for themselves and the other parties named above as beneficiaries. Prior to the execution of the trust instrument, R. W. Marquis conveyed to each of the plaintiffs and to Clifford Sinclair Marquis the following described real property, respectively: The NE ¼ of Section 13, the south fractional half of the SW ¼ of Section 7, and the south half of the SE ¼ of Section 12, and the NW ¼ of Section 13, in Township 79, Range 24. The deed to Adeline Grace Jones conveyed only a life estate. The other conveyances were of the fee. Each of the deeds was subject to a lease to the Des Moines Coal Mining Company, and to certain incumbrances not material, and also to certain reservations and exceptions hereafter to be noted.

The above described tracts were contiguous and adjoining. The shaft and mine leased by R. W. Marquis to the Des Moines

Coal Mining Company were located upon the tract conveyed to Clifford Sinclair Marquis. This lease, which was entered into in 1903, and which was abandoned prior to April 21, 1908, is only incidentally involved in this controversy.

R. W. Marquis and Walter C. and Clifford S. Marquis, trustees, in writing, on the above date, leased to the Swanwood Coal Company, for a term commencing on the date thereof and expiring April 21, 1928, unless sooner terminated in the manner therein provided, "the right to enter in and upon the following described land, to wit: The south one half (½) of the southeast one quarter (¼) of Section twelve (12) and the north one half (½) of Section thirteen (13) (excepting the right of way of the Chicago & Northwestern Railway Company, and excepting the right of way of the Des Moines, Iowa Falls & Northern Railway Company), all in Township seventy-nine (79), Range twenty-four (24); also the south fractional one half (½) of the southwest one quarter (¼) of Section seven (7) in Township seventy-nine (79), Range twenty-three (23), all being and situate in the county of Polk and state of Iowa, and containing in all about four hundred and eighty-seven (487) acres of land, more or less,—only for the purpose of searching for, mining and taking away upon condition, the mineral stone coal lying underneath the surface of the above described land, subject, however, to the strict performance of each and every stipulation, covenant, and agreement contained in this lease made on the part of the party of the second part, to be strictly kept and performed, otherwise void."

Under this lease, the lessee agreed to sink a shaft on the land, and to mine out all minable coal contained therein, with proper and due diligence and in the most approved and economical manner. The rental to be paid lessors was 12½ cents per ton for coal mined and screened in a certain way, and 8½ cents per ton for "mine run" coal. The lessees entered upon the tract conveyed to Adeline Grace Jones, and sunk a shaft and equipped a mine thereon, which was in operation at the time of the death of R. W. Marquis.

On July 9, 1909, the beneficiaries named in the trust deed, together with the trustees therein named, who were also beneficiaries, entered into an agreement in writing, reciting

that, by and with the consent of all of said beneficiaries, Walter Courtney Marquis and Clifford Sinclair Marquis had resigned as trustees, and that "J. A. McKinney shall be the sole trustee as successor in trust to the said Walter Courtney Marquis and Clifford Sinclair Marquis, trustees of the following described property, to wit:" (describing the real estate conveyed to the plaintiffs and Clifford Sinclair Marquis above referred to), limiting, however, the trusteeship, so far as we are now concerned, to all the coal and other mineral contained therein. Prior to the execution of this instrument, the parties had entered into an agreement in writing for a partial distribution of the trust estate, making suitable conveyances to each other for that purpose.

J. A. McKinney entered at once upon the performance of his duties as trustee, and thereafter neither of the persons designated in the original trust agreement assumed any part in the management or control of the trust estate. By the close of the year 1917, substantially all of the minable coal had been removed from the land of the plaintiffs. Large sums of money had been invested by the Swanwood Coal Company, lessee, in the mine opened and operated on the Jones premises.

The land lying immediately south of and adjoining the south half of the SE ¼ of Section 12, owned by Adeline Grace Jones, and adjoining the Bowman tract on the east, was owned by a party by the name of Kuble, and the tract immediately south of the Bowman land, by a party named McFarland. The coal underneath the Kuble and McFarland tracts had been, prior to February 25, 1918, leased to the defendant Norwood-White Coal Company. This company had no existing facilities for mining this coal. The minable coal having, previous to the above date, been removed from the Jones and Bowman tracts, the Swanwood Coal Company contemplated the removal of its property and equipment therefrom. Instead of doing so, however, on the above date it subleased its property, together with the right to use the entries from which the coal had been removed from the Bowman and Jones tracts, to the Norwood-White Coal Company, for its use in mining the coal on the Kuble and McFarland tracts. This instrument is referred to in the evidence sometimes as a lease and sometimes as an

assignment of the original lease of the Swanwood Coal Company. J. A. McKinney, as trustee, in writing indorsed upon the instrument, consented to the arrangement or agreement made and entered into between the two coal companies. The rental agreed upon for the use of the mine, mining property, and equipment is as follows:

"In consideration of said lease, and the grant to, and privileges herein conferred upon it, second party agrees to pay to first party rent therefor as follows:

"(a) Second party shall pay as rent to first party, in addition to all the rents, royalty and amounts due the Marquis estate, under the Marquis lease, the sum of seventeen and one-half cents (17½¢) per ton for all run of mine coal to be mined through said shaft.

"(b) It is expressly agreed that second party shall mine from said shaft not less than 230,000 tons of coal computed on the mine run basis. And it is further agreed that second party shall mine from said shaft the amount above stated not later than five (5) years from the date of these presents; and if at the expiration of five years the second party has not mined 230,000 tons, second party shall then pay first party the difference at the rate of seventeen and one-half cents (17½¢) per ton between the amount mined and 23,000 tons. Provided, however, that the deficiency so paid, if any, shall be credited upon subsequent earned royalty due from second party to first party.

"(c) Second party agrees to keep an accurate record in book or books of all coal mined from said shaft, showing the lands from which the same is taken; which book or books and records shall at all reasonable times be open to the inspection of first party. And second party agrees to furnish each month a detailed statement of all coal mined under the Marquis land, showing miners' names and numbers and amount of coal mined by each.

"(d) All money due as royalty or rents under this lease shall be due and payable on the 20th day of each month for all coal mined during the month next previous.

"(e) Second party agrees to pay all rents, royalties and amounts due the Marquis estate under the Marquis lease for shaft, hoisting, haulage privileges, and royalties for all coal

mined by second party from said shaft on lands now held under lease by first party in addition to the royalty of seventeen and one-half cents (17½¢). above provided. All rents and royalty due to Marquis estate shall be paid to first party, and first party shall then pay to, and settle with, Marquis estate direct.''

J. A. McKinney died in 1919, and thereafter, and up to the time of the trial, by the tacit agreement or acquiescence of all of the beneficiaries of the trust estate, but without specific appointment in writing, D. J. Van Liew, who was associated with McKinney in the banking business in the city of Des Moines, has acted as trustee, collecting and disbursing the funds of the estate.

The foregoing somewhat lengthy statement and recital of the documentary evidence are indispensable to anything like a clear and accurate understanding of the matters before us for decision.

Alice J. Bowman and Adeline Grace Jones commenced separate actions in equity against the Swanwood and Norwood-White Coal Companies, separate corporations, alleging that said companies were, without their consent, occupying and using the shaft and surface rights of the mine on the Jones tract and the underground entries on the Bowman tract for the mining and removal of foreign coal; that it was the legal duty of said companies to keep an accurate and correct account of all of the coal mined from adjoining tracts and removed through said underground entries and shaft; that plaintiffs had no knowledge as to the exact amount of coal thus removed. They prayed that the companies be required to account therefor, and that judgment be entered against them for the amount found to be due. Plaintiffs also asked that said companies be enjoined from further occupying or using said premises, and for general equitable relief.

The defendant coal companies filed separate answers to the petitions, denying generally the allegations thereof, and, by way of cross-petition, set up the exceptions and reservations in the deeds to plaintiffs, the several leases above referred to, the trust agreement, the resignation of Walter Courtney and Clifford Sinclair Marquis as trustees, and the appointment by joint

agreement of all of the beneficiaries of the trust estate of J. A. McKinney as trustee, and D. J. Van Liew by tacit consent and acquiescence to succeed him; asserted the validity of all of said agreements and the authority of McKinney to consent to the subleasing by the one coal company to the other; and asked that D. J. Van Liew, trustee, the plaintiffs, and the three sons of R. W. Marquis be made parties defendant to said cross-petitions, and for all proper equitable relief. D. J. Van Liew, as trustee, and the three Marquis brothers filed answer to the cross-petition of the coal companies, and also cross-petitions in their own behalf, in which they assert that the attempt to appoint and constitute McKinney as trustee was in violation and derogation of the terms of the trust agreement, and that the lease to the Norwood-White Coal Company was obtained by fraud; and pray an accounting and judgment for such sum as may be found due against the coal companies, and that they be restrained and enjoined from further using and occupying the said mine and underground entries for the removal of foreign coal, and for general equitable relief. By agreement of all of the parties, the causes were consolidated for trial, and all of the issues joined, tried as in one action.. We shall hereafter refer to the plaintiffs as appellants, the coal companies as appellees, and the remaining parties as cross-petitioners.

The primary claim of appellants is that the exceptions and reservations in the deeds of their father conveying the respective tracts to them are limited strictly to the mineral therein, together with the right to mine and remove the same, and to all things necessary for that purpose; that J. A. McKinney, as trustee, had no authority to consent to an assignment to the Norwood-White Coal Company of the lease executed by R. W. Marquis and his two sons, as trustees, to the Swanwood Coal Company, or to a sublease thereof, and that they were in no sense or manner bound thereby; that the interest and all rights of the trust estate ceased and terminated when the minable coal was removed from the premises; and that neither the original trustees nor their successors had authority to lease or otherwise manage or control the mine and underground entries on the premises.

In addition to asserting the validity of the assignment

or sublease of the premises to the Norwood-White Coal Company by and with the consent of J. A. McKinney, trustee, appellees allege that appellants and cross-petitioners, with full knowledge and acquiescence therein, have received and still retain their respective shares of the royalties or rentals paid by said lessees, and that by their acts and conduct they have ratified and confirmed the acts of the said McKinney, and are fully barred and estopped from asserting any claim against appellees for an accounting, or from enjoining the further use and occupancy of the premises for the purposes stated. Cross-petitioners deny the authority of J. A. McKinney, as trustee, to consent to the arrangement and agreement between the coal companies, and contend that his appointment as trustee was not in conformity with the terms and requirements of the trust agreement, but in derogation thereof, and that same is, therefore, void and of no effect. The relief they ask is for their share or proportion of the royalties or rentals found by the court to be due from appellees, if any, as beneficiaries of the trust estate.

It will thus be seen that, as against appellants and cross-petitioners, appellees stand together, and that, upon the theory of cross-petitioners, their interests and those of appellants are identical, but upon the theory of the latter, so far as the distribution of the proceeds of such judgment as may be entered is concerned, their interests are wholly adverse. In short, the issues have been so framed as to protect the rights and interests of all parties, whether as individuals, corporations, or beneficiaries of the trust estate.

The deeds from R. W. Marquis to appellants were by their terms intended as advancements. They contain the usual covenants of title and warranty, and only the reservations therein, upon any theory of the case, require construction. The specific language of these reservations is:

"All mines, veins, seams, and beds of coal, already found, or which may be found, hereafter upon or under the land above described, with full liberty of ingress, egress and regress at all times for him, * * * his heirs, assigns and lessees * * *."

The purpose of these reservations, as expressed in the instruments, is "* * * of searching for, mining, working, getting

and carrying away the said coal * * *," and to, by himself, his heirs, assigns, and lessees, "* * * sink, drive, bare, make and use pits, shafts, drifts, adits, air courses, watercourses, driveways, entries, surface railways, or underground railways," and to set up proper machinery, etc., "for the purpose of more conveniently working and carrying away the said coal," and sufficient of the surface for the removal and deposit of waste, rubbish, and other substances "taken from the said mines, and generally to do all other acts and things necessary or proper for working and getting and taking away the said coal."

It thus appears that the language of the quoted clause is direct, affirmative, and positive, and without limitation as to time. Appellants have assumed that the underground entries and mining right passed to them when the coal was all removed. If the purpose and intention of R. W. Marquis was to reserve for himself only the mineral imbedded beneath the surface, together with the right, by himself or lessees, to remove the same therefrom, then, when this was accomplished, the interest of the trust estate immediately ceased and terminated, and we think that whatever was left must belong to appellants.

There is much in the language of the reservations to indicate that his sole purpose was to reserve the mineral and the right to remove it; but, on the other hand, the instrument does not, in terms, so state. In arriving at the intention of the parties to a written instrument, and as an aid to the interpretation and construction thereof, it is always proper, where there is any ambiguity therein, to give weight and effect to the interpretation placed thereon by the parties themselves. The grantor evidently construed the instrument as reserving in him the right to demand of his lessee royalty or rental for the removal of foreign coal. This is not, however, necessarily conclusive, for the reason that he was, at the time of the execution of the lease to the Swanwood Coal Company, entitled to the possession of the premises and of all mines then or thereafter located or to be located thereon. It is also significant that Walter Courtney and Clifford Sinclair Marquis, in the court below and upon this appeal, contend that the reservations in the deed include the right of the trustees originally appointed to lease the land

for the very purpose for which it has been used since 1918. They base their claim wholly upon the alleged want of authority in McKinney to consent to the arrangement made, insisting that their successor could be appointed only in the way and manner designated by the trust agreement. So far as the attitude of cross-petitioners reflects their interpretation of the deeds, it is quite immaterial whether McKinney was legally appointed trustee by the voluntary act of all of the beneficiaries of the trust estate or not.

Neither the construction placed upon the instrument by R. W. Marquis, as evidenced by the provisions of the Swanwood Coal Company lease, nor by cross-petitioners, is conclusive or binding upon appellants. It merely throws light upon the understanding of all of the parties. Prior to giving his consent to the assignment of the original lease or the subleasing of the mine and underground passages by the Swanwood Coal Company to the Norwood-White Coal Company, McKinney received from the appellant Jones and from Clifford Sinclair Marquis their written request to make the assignment. Nothing is said in the writing, however, about a new lease. On the day the lease was signed, McKinney wrote to Mrs. Bowman at her Chicago address, explaining fully the arrangement that had been consummated with the coal company. In this letter he stated specifically that the coal to be mined was that imbedded in the McFarland and other lands. She could not have misinterpreted or misunderstood his meaning. She did not reply to this letter. Mrs. Jones and Clifford Sinclair Marquis have at all times resided in the immediate vicinity of the mine, and the other beneficiaries in the city of Des Moines near by.

The only protest against the above arrangement with the Norwood-White Coal Company on the part of the Marquis heirs was a notice dated October 23, 1918, signed by Mrs. Bowman, by her attorney, and served upon the Norwood-White Coal Company, notifying it that she had never consented "to the drawing of coal from other lands over or through the mining entries under my said tract of land, and that you must forthwith cease using any of said entries or said lands for the drawing or taking of coal from other lands, and that any violation upon your part of this injunction will result in proper pro-

ceedings by me to prevent such action.'' No heed was given to the notice by the coal company, and nothing further was done by Mrs. Bowman until this action was commenced in 1922. It must be conclusively assumed that Mrs. Bowman knew the contents of the notice. Although, as a witness, she affected ignorance as to what was done under the lease, and as to the removal of coal from other premises, we think she must be held, as a matter of law, to have known that the contract was being carried out. McKinney, in the letter written to Mrs. Bowman, made plain the purpose of the lease.

Mrs. Jones also testified that she gave no particular attention to the matter, and knew little about what occurred under the lease. It is true that the consent signed by her was to the proposed assignment of the original lease by the trustee. So far, however, as the question of estoppel is involved, it is not very material whether the original lease was assigned or a new one executed. The purpose and intention, whatever the method adopted, was to give the Norwood-White Coal Company the right to use the mine for the removal and mining of foreign coal.

The royalty or rental agreed upon was paid promptly by the coal company to McKinney, as trustee, until his death, in 1919, and thereafter to Van Liew, whom the beneficiaries had tacitly agreed upon as trustee, and who acted as such until the trial of this case. These payments were made monthly, and disbursed by the trustee to the use and benefit of the trust estate. The record is not quite clear as to the number of payments or the total amount that was paid to appellants and the other beneficiaries out of the royalties received, but there is a statement in the arguments of counsel for one of appellees that 60 dividends were distributed among them. Some, at least, of the checks sent to Mrs. Bowman were deposited by her husband, and it is quite possible that she did not know the full extent of the payments made; but she was bound, by her knowledge of the arrangement, to know that royalties or rentals would be due from the coal company for the use of the mine, and that the same would probably be paid. Any denial by appellants upon this point must be considered in the light of the transaction as known to them. Walter Courtney Marquis refused to consent to the arrangement between the coal companies. He knew, how-

ever, in advance that negotiations were taking place, and, according to the testimony of some of the witnesses, gave as his reasons for not consenting, that the rental was inadequate, and that he desired to avoid any conflict with the other heirs.  He received and accepted his share of the proceeds without protest, the same as did his co-beneficiaries.  Whether Mrs. Jones and Clifford Sinclair Marquis believed that the right to lease the mine and underground passages and entries was in the trustee at the time they consented to an assignment of the original lease, or whether they were willing, as owners of the right, to join in such arrangements, is of little significance.  The object and purpose of the parties would have been the same in either case.  At the time of the trial, the coal had already been removed from one, and largely from the other, tract covered by the lease.  It seems to us that whatever may be the true construction of the clause of appellants' deeds reserving certain rights in the grantor, they, and cross-petitioners as well, are not in a position to ask relief in equity.

The case presented is not one of mere silence or acquiescence in acts of which the parties had inadequate knowledge.  We must assume that all of the parties entered into the trust agreement for the appointment of J. A. McKinney as trustee in good faith, and in so far as he acted within the scope of his agency they cannot complain.  They cannot deal with their trustee as such, and acquiesce in and receive the benefits of his transactions, and deny his authority to act.  They were bound as principals by the acts of their agent.  He was selected by them to manage and control the trust estate of which they were the sole and exclusive beneficiaries.  The grantor was deceased at the time this instrument was executed; and while they were, of course, interested in preservation of the trust property and the carrying out of the terms of the trust, they signed the same as individuals, and with direct reference to their personal interest in the subject-matter of the trust.  There is, therefore, clearly no equity in the claims of cross-petitioners.  The appellant Jones dealt directly with the Norwood-White Coal Company in regard to drainage and other matters affecting the operation of the mine, with the result that the company expended several hundred dollars to comply with her demands.  She and

her husband testified that they would not have consented to the execution of the sublease, and that they signed the written consent with the understanding that the original lease was to be assigned.  They do not charge fraud upon the part of the trustee or the coal company, and there is nothing in the record to indicate that appellees knew of their attitude in this particular before entering into the lease.  In any event, appellants knew that an arrangement had been made by which the Norwood-White Coal Company was in possession of, and using, the mine and underground entries and passages for the removal of foreign coal.  They had no reason, so far as the record discloses, to assume that the rental was not being paid as it came due.

Many cases are cited by counsel for appellants upon the subject of estoppel, and it is earnestly contended that none is shown in this case.  It was not essential to an estoppel, nor to the ratification of the arrangement, that appellants should know in detail each and every step taken by the trustee or acts performed by appellees.  The knowledge which appellants admit they had of the arrangement under which the Norwood-White Coal Company was operating the mine was such that they could not sit by in silence and permit it to continue without protest, and expect to profit thereby.  They could not receive and retain the benefits of the arrangement, and repudiate it at will.  Mrs. Bowman knew that McKinney, in consenting to the arrangement, had acted as trustee, and yet she did not notify him that she claimed that the property was freed from the operation of the trust.  He certainly had a right to assume that she fully concurred in and ratified all that he did in the matter, or she would have at least answered his letter.  She knew that the disbursement of the royalty or rental paid by the lessee would be made by him, and that some of it would be paid to the beneficiaries. It seems to us that, under all of the authorities, including those cited by appellants, a complete ratification of the acts of the trustee and of the alleged estoppel is proved.  *Chamberlain v. Collinson,* 45 Iowa 429; *State Bank of Tabor v. Kelly,* 109 Iowa 544; *Helwig v. Fogelsong,* 166 Iowa 715; *Davenport Cent. R. Co. v. Davenport Gas Light Co.,* 43 Iowa 301; *Gill v. Patton,* 118 Iowa 88.

In view of our conclusion on this point, it is unnecessary to

discuss further the reservations in the deeds. We have suggested some of the matters bearing.thereon, but the estoppel proved is a complete defense to appellants' action, and it will serve no purpose to decide this point.

In our opinion, the knowledge of appellants of the arrangement; their long acquiescence therein, the acceptance and retention of their share of the rental paid under the lease, and their conduct as a whole, fully estop them to seek relief in equity as against appellees. A decree in their favor would work an injustice, and defeat, rather than effectuate, equity. For these reasons, no injunctive relief will be granted. The decree is— *Affirmed.*

DE GRAFF, C. J., and FAVILLE and VERMILION, JJ., concur.