Emmo JANSSEN and Dena Janssen,
Appellants,

v.

NORTH IOWA CONFERENCE PENSIONS,
INC. OF the METHODIST CHURCH, Rob-
ert M. Butson and Birdell Butson, Appel-
lees.

No. 53211.

Supreme Court of Iowa.

April 8, 1969.

Westfall, Laird, Burington, Bovard & Heiny, N. LeRoy Walters, and Richard R. Winga, Mason City, for appellants.

Remley & Heiserman, Anamosa, and Hobson, Cady & Drew, Hampton, for appellees.

RAWLINGS, Justice.

On plaintiffs' action in equity seeking specific performance in accord with written option contract for purchase of land, or in the alternative, damages, trial court held the option was not exercised. Plaintiffs appeal. We reverse.

In course of trial plaintiffs presented evidence and defendants rested offering no testimony.

February 14, 1966, plaintiffs and defendant North Iowa Conference Pensions, Inc. of the Methodist Church, entered into a written agreement by which plaintiffs were granted an option right to purchase the subject farm. The form instrument used was a Farmers Home Administration (FHA) option contract, with certain changes made by Dallas M. Harrison, defendant pension fund's farm manager.

Relevant provisions of the agreement state:

"1. *In consideration of the sum of $1.00, the undersigned* (herein called the 'Seller'), who covenants that he is the owner thereof, hereby, for himself and his heirs, executors, administrators, successors and assigns, *offers and agrees to sell and convey to* Emmo Janssen and Dena Janssen, Geneva, Iowa (hereinafter called the 'Buyer'), and hereby grants to the said Buyer the exclusive and irrevocable option and right to purchase, under the conditions hereinafter provided, the following-described property, located in Franklin County, State of Iowa: [Property Description].

"* * *

"*The title to said property is to be conveyed free and clear of all encumbrances except for the following reservations, exceptions and leases, and no others*: [None]

"* * *

"2. This option is given to enable the Buyer to obtain a loan insured or made by the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, and its duly authorized representatives, (hereinafter called the 'Government'), for the purchase of said property. It is agreed that the Buyer's efforts to obtain a loan constitute a part of the consideration for this option.

"3. The total purchase price for said property is $45,355.00; said amount includes $———— mentioned in paragraph 1.

"Upon payment of the above amount by the buyer, the seller agrees to furnish merchantable Abstract of Title and Deed.

"* * *

"8. *This option may be exercised by the Buyer, at any time while the offer herein shall remain in force, by mailing, telegraphing or delivering in person a written notice of acceptance of the offer herein*

*to D. M. Harrison, at Hampton, in the city of Hampton, County of Franklin, State of Iowa.*

"This option to buy must be exercised by Buyer on or before March 15, 1966 in order that Buyer may take advantage of Feed Grain Program." (Emphasis supplied).

February 26, 1966, a $6000 check, signed by plaintiff Emmo Janssen, payable to North Iowa Conference Pensions, Inc. of the Methodist Church, D. J. Keith, Treasurer, was delivered to pension fund's farm manager. It was accepted and kept until late in March or early April, when the farm manager offered return of the check to plaintiffs. They refused to accept it.

Later, with a letter bearing date May 20, 1966, the check was sent back to plaintiffs by the farm manager upon order of pension fund's board of trustees.

June 21, plaintiffs' counsel returned the check to pension fund's farm manager, with a request the abstract of title be brought up to date and delivered for examination. In addition defendants Butsons were advised, plaintiffs had exercised their option to buy the land, planned to hold defendant pension fund to the agreement, and Butsons, having negotiated for purchase of the same property, should govern themselves accordingly. The record is not clear as to when Butsons actually effected purchase but a deed conveying the land to them was recorded September 21, 1966.

As disclosed supra, trial court found the check delivered by plaintiffs to farm manager did not suffice as a written memorandum of acceptance, in that it failed to satisfy the terms of the option agreement.

On appeal plaintiffs claim, in substance: (1) the option contract was exercised by delivery and acceptance of the check; (2) specific performance of an option contract will lie if the court can ascertain with reasonable certainty the terms of agreement; (3) defendants Butsons are not bona fide purchasers without notice so as to prohibit

a specific performance decree; and (4) when a prima facie case is made, failure of the opposing party to present evidence gives rise to an inference, evidence if offered would be unfavorable. These contentions will not necessarily be dealt with in the order assigned.

I. Actions for specific performance stand in equity, our review therefore being de novo. Steele v. Northup, 259 Iowa 443, 448, 143 N.W.2d 302.

II. The first question presented is whether delivery by plaintiffs of the $6000 check to pension fund's farm manager constituted written notice of acceptance of the offer as contemplated by the option agreement.

At the outset this statement in Breen v. Mayne, 141 Iowa 399, 403–404, 118 N.W. 441, is of some significance: *"The only fixed rule regarding the manner of the exercise of an option under a contract granting it is to discover from the language of the instrument construed in the light of competent parol testimony, the intent of the parties with reference thereto.* It may be that under the terms of a given option the only proper and binding method of election or acceptance is by the payment or a tender of the purchase price. On the other hand, there are many cases where the option may be exercised in parol or by any other method indicating an election to take the land— the payment of the purchase price and the making of the deed being subsequent matters in performance of a binding contract. In the one case, there is an election to sell, upon payment of the purchase price, which is a condition precedent to the foundation of the contract; and in the other there is an election to take the land upon the terms proposed, payment of the purchase price being a condition subsequent, or rather the performance of an executory contract theretofore entered into.

"It is important in such cases to distinguish that which pertains to the performance of a contract from that which pertains to its making. To make any sort of a con-

tract, there must be a meeting of minds upon a given subject. An offer without acceptance is not a contract, and as a rule the acceptance to be binding must be in accord with the terms of the offer, and not in some other manner. In other words, the party making the offer may prescribe the mode of acceptance, and to constitute a binding contract this method must be followed." (Emphasis supplied.)

That brings us to intent of the parties as revealed by language of the instrument, construed in the light of competent parol testimony.

In dealing with admissibility of extrinsic evidence to show intent of the parties, this court stated in Hamilton v. Wosepka, Iowa, 154 N.W.2d 164, 168–171: "It is sometimes said that if the words of a contract are plain and clear, evidence of surrounding circumstances to aid interpretation is not admissible. 'It is true that when a judge reads the words of a contract he may jump to the instant and confident opinion that they have but one reasonable meaning and that he knows what it is. A greater familiarity with dictionaries and the usages of words, a better understanding of the uncertainties of language, and a comparative study of more cases in the field of interpretation, will make one beware of holding such an opinion so recklessly arrived at.' 3 Corbin on Contracts, section 535.

" 'A word is but a symbol which may stand for one of an innumerable numbers of objects.' 2 Sutherland Statutory Construction, Third Ed., (By Horack), section 4502.

" 'No parol evidence that is offered can be said to vary or contradict a writing until by process of interpretation it is determined what the writing means. The "parol evidence rule" is not, and does not purport to be, a rule of interpretation or a rule as to the admission of evidence for the purpose of interpretation. Even if a written document has been assented to as the complete and accurate integration of the terms of a contract, it must still be interpreted; and

all those factors that are of assistance in this process may be proved by oral testimony.

" 'It is true that the language of some agreements has been believed to be so plain and clear that the court needs no assistance in interpreting. Even in these cases, however, it will be found that the court has had the aid of parol evidence of the surrounding circumstances. The meaning to be discovered and applied is that which each party had reason to know would be given to the words by the other party. * * *.'
" * * *

" 'Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity. The polestar of construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance. Such evidence is adducible only for the purpose of interpreting the writing—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said. So far as the evidence tends to show, not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant. The judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the expressed general purpose. Casriel v. King, 2 N.J. 45, 65 A.2d 514 [,517] (1949).

" 'The "parol evidence rule" is a rule of substantive law not related to interpretation or the admission of evidence for the purpose of interpretation. Oral testimony of facts

relevant to meaning are not within that principle. Parol evidence cannot be said "to vary or contradict a writing until by process of interpretation it is determined what the writing means. * * * Such testimony does not vary or contradict the written words; it determines that which cannot be varied or contradicted." Corbin on Contracts, section 579. The "parol evidence rule" purports to exclude testimony "only when it is offered for the purpose of 'varying or contradicting' the terms of an 'integrated' contract; it does not purport to exclude evidence offered for the purpose of interpreting and giving a meaning to those terms. The terms of any contract must be given a meaning by interpretation before it can be determined whether an attempt is being made to 'vary or contradict' them." Ibid, Sections 536, 543. * * *.'

" * * *

"Proof of the circumstances may make a meaning plain and clear when in the absence of such proof some other meaning may also have seemed plain and clear. Sometimes the circumstances proof of which is offered do not have any probative value and do not affect a meaning that is arrived at without them. When such is the case, such circumstances are immaterial. In other cases, the testimony of additional factors may not be believed by the trial court after it has been admitted, in which case the meaning of words that is otherwise 'plain and clear' will be adopted.

"Of course, an otherwise 'plain' meaning should not be disturbed by the proof of irrelevant circumstances or of those having only a remote bearing on inconsequential weight. But until a court knows the circumstances it can not properly say that they have no probative value. Rasch v. City of Bloomfield, supra. Citing 3 Corbin on Contracts, section 542." See also Decker v. Juzwik, 255 Iowa 358, 367–368, 121 N.W.2d 652.

III. We look now to circumstances surrounding the transaction here involved as a means by which to determine the meaning accorded by the contracting parties to those terms of the agreement concerning a written memorandum of acceptance.

Plaintiff, Emmo Janssen, testified in substance, when he gave pension fund's farm manager the $6000 check on February 26, 1966, it was to "fulfill my option papers."

On cross-examination Mr. Janssen related, later in March, after delivery of the check to pension fund's farm manager, he "asked me * * * if the check was good and I told him it was. He then said, 'Then you may as well pick up the $1.00.' So I did pick up the $1.00 and he kept the check. That was about the conversation as far as I can remember. He did not tell me that the Option had expired; was no good and here is your $1.00 back; or that in substance".

Again on cross-examination, when asked to state whether on signing the agreement of February 14, 1966, he thought the farm was to be purchased on time payments or for cash, Janssen answered he then understood "it was on time till July the 1st."

When counsel for pension fund inquired as to whether he had succeeded in obtaining money any place before March 15, 1966, Janssen replied, "just that FHA loan had been approved."

"Q. * * * Now, are you saying, Mr. Janssen, that the money from FHA, by the 15th of March in 1966, you could have got that money? A. No, I couldn't have.

"Q. When is it that you bought the farm, as you claim?

"* * *

"A. * * * Well, when I really thought that the deal was closed was the 26th of February when Mr. Harrison asked for the check."

Due to the fact defendants offered no testimony the record is barren of direct evidence as to how defendant pension fund viewed the $6000 check.

In dealing with failure of a party to present trial evidence this court said in State v. Cotton, 240 Iowa 609, 625, 33 N.W. 2d 880, 889: "Many years ago in Blatch v. Archer, 1 Cowper 63, 65, Lord Mansfield announced this maxim: 'All evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted.' It has been reannounced by courts to this day. * * * It is a well and long-recognized principle, thus stated in Hall v. Vanderpool, 156 Pa. 152, 155, 26 A. 1069, 1071, that: 'Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so, the jury may draw an inference that it would be unfavorable to him.' This court has stated the same principle at different times. (Cases cited.)" See also Connolly v. Nicollet Hotel, 258 Minn. 405, 104 N.W.2d 721, 729; 31A. C.J.S. Evidence § 156(3) (4), pages 403–425; 29 Am.Jur.2d, Evidence, section 188, page 237; and McCormick, Treatise on Evidence, section 249, page 533.

Upon the basis of unfavorable inferences drawn from failure on the part of any defendant to produce evidence, and the undisputed testimony presented by plaintiffs, certain pertinent and uncontroverted facts or circumstances surrounding the making of this agreement become apparent.

In summary, they are: (1) an option agreement between these parties was executed about February 14, 1966; (2) consideration for the option was $1.00 paid by Janssens, and procurement by them of an FHA loan, later approved by that authority; (3) delivery of written notice of exercise of the option to defendant pension fund's farm manager by March 15, 1966; (4) February 26, 1966, plaintiffs delivered to farm manager a $6000 check payable to pension fund; (5) it was accepted and retained until May 20, 1966, then returned; and (6) plaintiffs understood, at time the option agreement was executed, they had until July 1st to complete the purchase.

■ Resultantly, it is evident the check in question was delivered as a written notification of election to effectuate the option privilege, and accepted as such by pension board, thereby vesting in plaintiffs an effective contractual purchase right.

IV. Viewed in another light these same facts disclose, pension fund is estopped from claiming the option right was not exercised.

In Goodwin Tile & Brick Co. v. DeVries, 234 Iowa 566, 568–569, 13 N.W.2d 310, 155 A.L.R. 346, this court stated: "The doctrine of equitable estoppel is a familiar one. It is applied to prevent fraud and injustice and exists wherever a party cannot in good conscience gainsay his own acts or assertions. Hainer v. Iowa Legion of Honor, 78 Iowa 245, 43 N.W. 185. The fraud may be either actual or constructive. Anfenson v. Banks, 180 Iowa 1066, 163 N.W. 608, L.R.A.1918D, 482. A fraudulent intention is not essential. It is enough if a fraudulent effect would follow, allowing a party to set up a claim inconsistent with his former declarations or conduct. Helwig v. Fogelsong, 166 Iowa 715, 148 N.W. 990; Browning v. Kannow, 202 Iowa 465, 210 N.W. 596.

"The essential elements of equitable estoppel, or estoppel in pais, have been listed as false representation or concealment of material facts, made to one without knowledge of the real facts, with the intention that it be acted upon; and reliance thereon by the party to whom made, to his prejudice and injury. Stookesberry v. Burgher, 220 Iowa 916, 262 N.W. 820. That each element should be proven clearly, convincingly, and satisfactorily is noted in Smith v. Coutant, 232 Iowa 887, 891, 6 N.W.2d 421, 424, which, after considering many authorities, states:

" '* * * In general, the doctrine of equitable estoppel is based upon the grounds of public policy, fair dealing, good faith,

and justice, and *its purpose is to forbid one to speak against his own act, representations, or commitments, to the injury of one to whom they were directed and who reasonably relied thereon.* Such a doctrine is neither odious nor in disfavor, in either law or equity.' " (Emphasis supplied.)

See also Lamp v. Lempfert, 259 Iowa 902, 146 N.W.2d 241; Wetzstein v. Dehrkoop, 241 Iowa 1237, 1244–1245, 44 N.W.2d 695; Smith v. Coutant, 232 Iowa 887, 6 N.W.2d 421; Bowman v. Swanwood Coal Co., 201 Iowa 1236, 207 N.W. 591; Sawyer v. Iowa Const. Prohibitory Amendment Ass'n, 177 Iowa 218, 158 N.W. 679; Knutson v. Vidders, 126 Iowa 511, 102 N.W. 433; and 31 C.J.S. Estoppel § 59b, p. 373.

■ In the instant case pension fund not only accepted plaintiffs' check, but retained it well beyond expiration date of the option agreement. Furthermore, as previously disclosed, plaintiff, Emmo Janssen, testified he gave the check to fulfill the option papers and it was his understanding the purchase privilege was exercised by delivery of the check. It is therefore evident, pension fund's own acts and representations in accepting and retaining the check beyond the time period of the option-exercise-deadline, coupled with plaintiffs' reliance thereon, estops pension fund from now claiming the check was an insufficient memorandum under terms of the contract.

■ While it might be argued plaintiffs did not specifically allege estoppel, our statement in Mensing v. Sturgeon, 250 Iowa 918, 929–930, 97 N.W.2d 145, 151, is here pertinent: "It is true the defendants here have not in terms asserted an estoppel; but they have pleaded facts giving rise thereto. This is sufficient. It is not necessary to use the specific word 'estoppel' or 'estopped'. Bibler v. Bibler, 205 Iowa 639, 646, 647, 216 N.W. 99, 102." See also Smith v. Coutant, 232 Iowa 887, 890–892, 6 N.W.2d 421.

V. Having concluded the option right was exercised, enforceability of the contract must next be determined

■■ On that subject this court said in Decker v. Juzwik, supra, loc. cit., 255 Iowa 378, 121 N.W.2d 652: "A decree of specific performance rests in the sound discretion of the court. Its object is to best effectuate the purposes for which the contract was made, and it should be granted upon such terms and conditions as justice requires. Restatement, Contracts, § 359."

■ It is also well settled, specific performance will not be decreed unless contract terms are so expressed the court can determine with reasonable certainty the duty of each party and the conditions relative to performance. Smith v. Stowell, 256 Iowa 165, 170, 125 N.W.2d 795, and Pazawich v. Johnson, 241 Iowa 10, 14, 39 N.W.2d 590.

In that respect defendant pension fund argues the agreement is fatally uncertain as to, (1) when payment of the purchase price is to be made; (2) when possession is to be given; (3) who shall pay taxes; (4) whether insurance is to be carried and by whom; and (5) whether interest is to be paid.

■ With regard thereto this statement in 81 C.J.S. Specific Performance § 34, p. 494, is both pertinent and informative: "* * * a contract to convey land can be specifically enforced even though no certain and definite time is fixed for payment of the purchase price, at least when an obligation to pay within a reasonable time is implied; * * *. Also a lack of provision for the time of payment of interest, such as annually or semiannually, does not create an important uncertainty or ambiguity; and a failure to state the time for making a conveyance does not make the contract too ambiguous, uncertain, or indefinite for specific enforcement, at least where the time of conveyance is not of the essence of the contract. So, the failure of a contract for the sale of realty to fix a definite time for consummation of the transaction does not prevent specific performance if the contractual terms are so expressed that the court can determine with

reasonable certainty the parties' duties and the conditions under which performance is due." See also 49 Am.Jur., Specific Performance, section 23, page 36.

In Carter v. Bair, 201 Iowa 788, 208 N.W. 283, this court was confronted with the matter of specific performance arising out of an option to purchase contained in a lease. Dealing with certainty of the terms of that agreement, we stated at 201 Iowa 789–790, 208 N.W. 283: "Nothing is said about possession; but the purpose of the contract was to put the plaintiffs in the enjoyment of the property, inferentially as a residence, for which they, as tenants, were to pay $25 per month. On exercising the option, they were to continue to pay the $25 per month, and in addition were to pay the interest, at 7 per cent, and by plain implication were to pay the taxes after the last tax payment that would become delinquent during the original term of the lease. Defendant is to have the interest. This represents the use of the purchase money. Plaintiffs are to pay interest and taxes, and we think this must be for the use of the property, and that they are entitled to continue in the possession. Nothing is said about title, but the law would imply that the defendant should furnish marketable title. Nothing is said about conveyance, but here too the law would imply a covenant to convey when the purchase money is paid. All of the essential elements of a contract are present. We think that, though many of the ordinary provisions of a contract of sale are not provided for in terms, they are such as may, and under the circumstances ought to be, supplied by intendment. Schermer v. Wilmart, 282 Pa. 55, 127 A. 315."

The contract before us discloses the agreed purchase price is $45,355, description of the real estate is definite and certain, title "is to be conveyed free and clear of all encumbrances," upon payment of the prescribed price, and "seller agrees to furnish merchantable Abstract of Title and Deed."

It is now apparent all remaining to be done is that pension fund provide an abstract showing it holds "merchantable title", and upon payment of agreed price deed be delivered. According to the record, plaintiffs already occupy the land as lessees. Resultantly their possession as owners will reasonably coincide with conveyance of title.

■ We conclude the agreement as written is sufficiently and reasonably certain to warrant the requested specific performance.

VI. But pension fund argues, even if the contract is so reasonably certain as to be specifically enforceable, such a decree should not issue because of their sale of the land to defendants Robert and Birdell Butson.

On the other hand, plaintiffs contend defendants Butsons are not bona fide purchasers, therefore sale of the property to them does not preclude an action for specific performance.

This court dealt with that precise question in Hayne v. Cook, 252 Iowa 1012, 1029–1030, 109 N.W.2d 188, 197, and there said: "The rule is well established that to be a good faith purchaser for value, one must show he made the purchase before he had notice of the claim of another, express or implied. It is his burden. * * *

"It is a general rule announced in 66 C.J.S. Notice § 11, pp. 642, 643, 644, 'that whatever puts a person on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding. A person who has sufficient information to lead him to a fact is deemed conversant with it, and a person who has notice of facts which would cause a reasonably prudent person to inquire as to further facts is chargeable with notice of the further facts discoverable by proper inquiry. So, wherever facts put a person on inquiry, notice will be imputed to him if he designedly abstains from inquiry for the purpose of avoiding notice. A person must use every reasonable means to ascertain such

facts as may be open to his observation, and he must exercise reasonable care to ascertain facts coming to his notice.' Johnson v. Chicago, B. & Q. R. Co., 202 Iowa 1282, 1288, 1289, 211 N.W. 842. Also see numerous citations both in Vol. 66 C.J.S. and in the 1960 pocket part."

And in 37 A.L.R.2d 1112, 1113 appears this editor's statement: "The view taken by, or recognized in, the majority of decisions, consistent with the general principle that possession of real estate is constructive notice of all rights of the possessor, is that the possession of real property by a tenant, provided the possession is of that extent and nature generally necessary to constitute constuctive notice, charges a subsequent purchaser or mortgagee with notice of the tenant's agreement with the owner-landlord to purchase the property." See also Bartels v. Hennessey Brothers, Inc., Iowa, 164 N.W.2d 87, 94; Golden v. Bilbo, 192 Iowa 319, 184 N.W. 643; Leebrick v. Stahle, 68 Iowa 515, 27 N.W. 490; and State v. Jewell, 250 Wis. 165, 26 N.W.2d 825, 28 N.W.2d 314.

The undisputed record reveals plaintiffs have been in continuous possession of the land, as tenants, since 1945. Had Butsons made the inquiry required on their part, existence of the option to purchase could easily have been discovered. Additionally, the testimony of Mr. Harrison, farm manager, lends support to the conclusion, Butsons were knowledgeable of plaintiffs' claim. In that direction Harrison testified: "Between the date of Exhibit 1, February 14, 1966, and the date of the sale of the real estate to the Butsons, I did nothing myself, in connection with letting it be known to the public that the real estate involved in this litigation was for sale. However, it leaked out somehow that Emmo was unable to purchase and that is my first contact then with other people. I didn't let it be known other than when Mr. Anderson came and asked me if it was true that this farm was for sale and I said well, from my understanding, the Contract was null and void and it would be and if he wished

to put a bid on it, I would take it and send it in to the proper authorities. I took his bid and sent it in to the Executive Committee. Mr. Butson also contacted me and that was the extent that it was made known to the public so far as I know that it was for sale."

In addition to farm manager's testimony, a letter sent by plaintiffs' counsel to Butsons, introduced in evidence, discloses they were advised plaintiffs were holding pension fund to their option agreement.

██ On the basis of the foregoing, coupled with unfavorable inferences stemming from Butsons' failure to offer evidence, contrary to that presented by plaintiffs, we conclude they stand charged with prior constructive knowledge of plaintiffs' rights, thereby removing them from the status of good faith purchasers for value without notice.

Resultantly, Butsons stand in the position of a trustee and may be compelled to perform specifically in accord with the contract between plaintiffs and defendant pension fund. In support hereof see Connolly v. Des Moines & Cent. Iowa Ry. Co., 246 Iowa 874, 888–889, 68 N.W.2d 320: 92 C.J.S. Vendor & Purchaser §§ 302–303, pp. 183–184; 49 Am.Jur., Specific Performance, sections 147–148, pages 170–172; and 55 Am.Jur., Vendor and Purchaser, section 36, page 505.

██ VII. Having determined the exercised option agreement is specifically enforceable, we hold the parties contemplated a reasonable time for payment of purchase price and transfer of title.

Accordingly, trial court shall enter a decree of specific performance which, among other things shall provide defendants promptly deliver to plaintiffs an abstract showing good and marketable title, and on or before August 1, 1969, likewise deliver good and sufficient deed conveying the subject property to plaintiffs, whereupon the agreed purchase price shall be paid, unless for good cause shown trial

court shall order such extension of time as may be reasonably necessary.

With regard to the foregoing see sections 624.29–624.35, Code, 1966, and Decker v. Juzwik, supra, at 255 Iowa 378–379, 121 N.W.2d 652.

This case is reversed and remanded with instructions that trial court set aside the decree heretofore entered, enter a specific performance decree as prayed, and for such further proceedings, consistent with this opinion, as may be lawfully necessary and proper.

Reversed and remanded with instructions.

All Justices concur, except MOORE, J., who concurs in the result.