SAMUEL C. BIBLER et al., Appellees, v. DAVID DAWSON BIBLER et al., Appellants.

640

NOVEMBER 22, 1927.

REHEARING DENIED MARCH 10, 1928.

*Henderson & Jones* and *A. L. Steele,* for David Dawson Bibler and Mrs. David Dawson Bibler, appellants.

*Newel & Wallace* and *F. J. Lund,* for Mr. and Mrs. Samuel C. Bibler, appellees.

*R. G. Remley,* for Esther Bibler, appellee.

FAVILLE, J.—I. Barrett Bibler and Florence Bibler were husband and wife. They were the parents of four children, the

appellees Samuel, Ruth Z., and Barrett Fern, and the appellant David Dawson. Prior to the year 1911, Barrett Bibler had title to 280 acres of the land in controversy, and his wife, Florence, had title to 40 acres of the tract. There was certain real estate in the state of Kansas and a house belonging to one or the other of the parties. There was domestic trouble between Barrett and his wife, and a separation was agreed upon. The property rights were adjusted by contract. The Kansas property and an amount of money were turned over to Florence. The title to the forty was vested in Barrett, so that he owned the half section. On September 25, 1911, Barrett and Florence joined in a deed of said premises to David, which was recorded on October 14, 1911. On the same date on which said deed was executed and delivered to David, the latter executed and acknowledged a deed to said premises, with the name of the grantee left blank. This deed was, by agreement of Barrett and David, deposited in escrow with one Crosley, under a written statement signed by David, as follows:

"September 25th, 1911. To Varick C. Crosley: The deed this day deposited with you in escrow, made by David D. Bibler in blank, is to be held by you for the benefit of Barrett Bibler and his children, and should said Barrett Bibler at any time demand said deed of you, you are to write his name as grantee in said deed, or the names of his children, as he may direct, and in case of the death of said Barrett Bibler, you are to write the names of his surviving children and issue of any deceased children, as the case may be.

"David D. Bibler."

At or about the time of the execution of said instruments, in the autumn of 1911, David and his father moved on the premises, and lived together for a time. David was then unmarried, and was about 21 years of age. David has been in possession of said premises ever since. He was married in 1916, and has a family. Barrett moved about the country, living in different states, and spending part of his time with David on the farm. Barrett and Florence were divorced sometime prior to 1915.

On March 17, 1915, Barrett obtained the deed that had been deposited in escrow. He had his own name inserted as grantee, and took possession of the deed. He gave the deposi-

tary a proper receipt therefor. Said deed was never recorded. It is contended by David that, on or about January 11, 1916, he entered into a new arrangement with Barrett. His contention is that, at that time, the deed which Barrett had withdrawn from escrow was canceled by Barrett, by writing thereon "Canceled. Barrett Bibler," and that said deed was then surrendered to appellant. It is the contention of appellant that at said time, as a consideration for the cancellation and surrender of said deed, the appellant and said Barrett entered into a written contract, as follows:

"This agreement, made in duplicate this 11th day of January, A. D. 1916, between Barrett Bibler, father of David D. Bibler, and David D. Bibler, both of Stanhope, Hamilton County, Iowa, witnesseth:—

"That for and in consideration of the undertakings on the part of David D. Bibler and of the transfer by Barrett Bibler and Florence M. Bibler, then husband and wife, to David D. Bibler, of the following described real estate situated in Hamilton County, Iowa, to wit:—

"The south half of the southwest quarter of Section twenty (20); the northeast quarter of Section twenty-eight (28), and the east half of the northwest quarter of Section twenty-nine (29), all in Township eighty-seven (87) north, Range twenty-five (25) west of the 5th P. M., Iowa, containing 320 acres according to government survey.

"And in consideration of the said David D. Bibler taking said transfer to said real estate subject to a lease with Samuel C. Bibler and O. M. Mortenson, and also accepting said transfer subject to the drainage taxes as assessed against said real estate and also in consideration of the undertaking on the part of the said David D. Bibler to assume and pay any indebtedness now against the said real estate, thus fully relieving the said Barrett Bibler from any care in connection therewith, and in further consideration of the love and affection existing between father and son, the parties hereto, Barrett Bibler and David D. Bibler hereby enter into this mutual agreement and understanding.

"The said Barrett Bibler hereby acknowledges that all matters of account between himself and said David D. Bibler have been mutually settled and fully disposed of and that there is now no unsettled balances between them. That the warranty

deed to said real estate executed on or about the 25th day of September, A. D. 1911, is of full force and effect conveying to said David D. Bibler all of the interest of the grantors therein and that all claims of Barrett Bibler in and to said real estate are merged in and form a part of this contract of agreement, this agreement being especially drawn for the purpose of clearly defining the relations of the parties hereto to said real estate, and to put beyond question the interest of the parties hereto in and to said real estate.

''The said David D. Bibler, in consideration of the said transfer as above set out, and because of the love and affection which he bears his said father, hereby agrees to provide a home for his said parent during his natural life. The father having the right under this contract to live with and as a member of the family of David D. Bibler, providing such home is suitable and congenial for the occupancy of said Barrett Bibler, and should such home not be suitable for said Barrett Bibler, taking into consideration his age and the state of his health then to provide suitable support and means for his said father to live elsewhere, leaving it entirely optional with his said father whether he shall make his home with said David D. Bibler or shall live elsewhere.

''It is now understood and agreed between the parties hereto that there is now a fixed indebtedness against said real estate aggregating more than eight thousand dollars, and that the health of Barrett Bibler is such that he cannot hope to make any headway towards clearing the same of such indebtedness, and that it is necessary that there should be a full, complete and definite understanding between the parties hereto in order that provisions should be made for the purpose of meeting such indebtedness as well as to provide for the future support of Barrett Bibler.

''The said Barrett Bibler further recognizes the fact that David D. Bibler is at this time unmarried, having no one to keep house for him and to help him make a home and to provide a suitable home for said Barrett Bibler; that said David D. Bibler would not care to marry, or that a suitable woman, perhaps, would not care to marry him until said David D. Bibler had made suitable provisions for a home and for such reasons, as well as those heretofore stated it is desired by the parties hereto that this contract should be entered into clearing up any matters

in connection with said real estate and any personal property situated thereon and clearly defining the relations of the parties hereto to the same. It being the desire of the said Barrett Bibler to see his son, David D. Bibler, married and settled, and to have it clearly understood that all the property rights existing between them have been fully settled.

"In witness whereof we have hereto subscribed our names the day and year first above written.

"David D. Bibler,

"Barrett Bibler."

Barrett married the appellee Esther on November 29, 1916, at New Orleans. They did not live together continuously thereafter.

After the transaction of January, 1916, the appellant made extensive and permanent improvements on the farm, in the way of buildings, fencing, and tiling, amounting to approximately $22,000 in value. He also paid money to his father at various times, in the amount of approximately $5,000. He has placed mortgages on said premises that aggregate approximately $23,000. Barrett died in May, 1922.

The foregoing is a general outline of the case. Appellee Samuel contends that Barrett died seized of said real estate, and asks partition thereof. Appellee Esther claims her distributive share therein, and also title to a specific eighty under a claimed contract. Appellees Ruth Z. and Barrett Fern made no appearance, and are in default. Appellant claims to be the owner of the premises in fee.

There are allegations of fraud and of undue influence and of mental incompetency. Much of the evidence is from incompetent witnesses. Appellee Esther claimed a certain 80 acres of said premises under an alleged contract. She failed in her proof, and the trial court denied her any relief on this claim. She has not appealed. We do not consider her argument on this question an appeal.

Without attempting to review the evidence in detail, we state our conclusions on a few of the matters involved. We find that the decedent Barrett, while peculiar and eccentric, and suffering from physical ailments, was not mentally incompetent during any of the transactions involved in this case. We further find from the evidence that there was no such fiduciary relation

between Barrett and appellant and no such evidence of fraud or undue influence exerted upon the decedent by the appellant as would vitiate the transactions between them that are involved in this case.

II. It is contended that appellant never acquired a title in fee simple in said premises, but that at all times he held the same solely in trust for the benefit of the decedent and his children. There is evidence that, at the time of the original transaction, the decedent Barrett was having trouble with his wife, and that they were about to separate, and that his wife demanded an amount in cash. It is claimed that the wife, Florence, objected to signing a mortgage on the premises, and that the title was placed in appellant, as a trustee, to enable him to borrow money to pay to Florence. It appears that appellant did make a loan of $3,000 on said premises shortly after the deed was given to him; and while the record is not perfectly clear on the question, we think that a part of the money went to the wife, and a part to pay debts of Barrett.

Appellees further contend that by the terms of the written instrument under which the deed was deposited in escrow it is apparent that the title held by said David was not a fee title, but was held in trust "for the benefit of Barrett Bibler and his children." The written conditions under which the deed was delivered expressly provided that it was to be held by the depositary "for the benefit of Barrett Bibler and his children," and provided that at any time Barrett Bibler might demand the said deed, and have his name inserted as grantee, or have the names of his children inserted as grantees, as he might direct; and it provided that in case of his death the depositary should write the names of his surviving children as grantees. It must be conceded that there is force in appellees' contention at this point. If Barrett had died while said deed remained in escrow, under the agreement by which it was held, the children of Barrett would have been entitled to have their names inserted as grantees therein, and could have required delivery thereof to them. We think it must be held that at that time appellant was custodian of the legal title to the premises subject to the provisions of the agreement by which his deed thereto was held in escrow. These provisions, however, were later fully performed. The deed was demanded by and was delivered to Barrett, and his name was

inserted therein as grantee, exactly as was provided in the written instrument under which said deed was left in escrow. This unrecorded deed so delivered to the said Barrett must be held, under well recognized rules, to have conveyed the title to said premises from the appellant to the said Barrett. So at this point we have the legal title reinvested in Barrett under the deed delivered to him out of escrow. The conditions under which it had been held in escrow had now been fully performed. Had nothing else transpired in said matter, and had the said Barrett died intestate, under such circumstances, even though said deed was not recorded, the property would have passed, according to the laws of descent, as the property of decedent.

It is the contention of the appellant, however, that, after said deed had so been delivered by the depositary to the decedent, it was surrendered and canceled, and that the original title conveyed by Barrett to the appellant under the deed to him was re-established and confirmed. In other words, briefly stated, the position of the appellant is that the deed which was deposited in escrow was delivered by the depositary to Barrett on March 17, 1915, with the name of Barrett inserted as grantee therein, and that thereafter, to wit, on or about January 11, 1916, Barrett marked said deed ''Canceled,'' indorsed his name thereon, and surrendered the same to the appellant, in consideration of a written agreement entered into between the appellant and said Barrett; and that this vested fee title in appellant. This is really the crucial point in the case. In this jurisdiction, ''it is well settled that a voluntary surrender of the possession of an unrecorded deed made with the intention of relinquishing the title conveyed by it and accepted by the grantor as such relinquishment in consideration of other agreements between the parties founded thereon will estop the grantee from asserting any further right under the instrument.'' *Brown v. Brown,* 142 Iowa 125.

See, also, *Wardman v. Harper,* 156 Iowa 453; *Partello v. White,* 197 Iowa 24. Cases from other jurisdictions sustaining the rule are cited in the *Brown* case, supra. We are disposed to adhere to it. We therefore consider the matters surrounding the transaction that it is claimed impeach its verity.

It is contended that no estoppel was pleaded. It is not essential that the words ''estoppel'' or ''estopped'' be used in a

 pleading. The ultimate facts are set out with sufficient certainty. It was unnecessary, and in fact improper, to plead a mere legal conclusion.

Appellees contend that the purported indorsement on said deed, "Canceled. Barrett Bibler," was a forgery, and that the signature of said decedent to the contract of January 11, 1916, was also a forgery. A number of exhibits bearing the genuine signature of Barrett were introduced in evidence. No handwriting expert testified in the matter, and the opinion expressed by those familiar with the handwriting of Barrett is quite unsatisfactory. The testimony is direct of one witness that he wrote the word "canceled" on the deed, and personally saw the decedent write his name thereunder. From a careful examination of the entire record, including the exhibits which have been certified to this court, we are of opinion that the signature to the cancellation and to the said contract is the genuine signature of the said Barrett.

It is contended that, even after the transaction of January 11, 1916, the appellant recognized that he held said title in trust, and was not the fee owner of said premises, and that the said  Barrett also so recognized such to be the situation. Two items of evidence at this point demand our consideration. One is with regard to an unsigned contract, and the other is in respect to a purported will executed in Louisiana. It appears that, at one time after his marriage to Esther, Barrett and his wife had some talk about Esther's caring for Barrett during the remainder of his life and receiving compensation therefor. She was about 24 or 25 years of age, and Barrett was 61 or 62. He was in poor health. It is claimed that there was an oral understanding that appellant should have a contract drawn between the parties; that appellant employed an attorney in Des Moines to prepare such a contract; and that Barrett and his wife went to Denver, and the contract was forwarded to them for signature. The wife contends that she and Barrett signed such contract; but it was never signed by appellant and his wife, and never became effective. There is some conflict in the evidence with regard to the exact terms of said proposed contract, but an unsigned copy was produced and sufficiently identified in the evidence. It is as follows:

"This agreement made in duplicate this 31st day of May,

A. D. 1918, by and between Barrett Bibler and Esther Bibler, his wife, as parties of the first part, and David D. Bibler and Essy G. Bibler, his wife, as parties of the second part, witnesseth:

"That whereas Barrett Bibler is the father of David D. Bibler, and said Barrett Bibler and David D. Bibler, by a written contract heretofore entered into, provided for the support of said Barrett. Bibler, who was then a widower for the remainder of his natural life, the said Barrett Bibler being privileged to make his home with said David D. Bibler, or to select a place of residence elsewhere.

"And whereas since entering into said contract the said Barrett Bibler has married Esther Bibler, and the parties of the second part being desirous of furnishing said Barrett Bibler with all possible comforts during the remainder of his natural life, and also to make suitable provisions for said Esther Bibler, provided she shall administer to the wants and comforts of said Barrett Bibler during the remainder of his natural life.

"Therefore the parties of the second part hereby agree to and with the parties of the first part, that in case the said Esther Bibler shall continue to live with said Barrett Bibler as his wife, and shall lovingly and carefully administer to his needs as they may arise, faithfully fulfilling the vows taken at the marriage altar so long as said Barrett Bibler shall live, then and in that case the parties of the second part undertake and agree to pay to said Esther Bibler, as long as she remains the widow of said Barrett Bibler the sum of five hundred dollars per annum; payable one fourth quarterly in advance.

"It is further understood and agreed between the parties hereto that the parties of the second part shall hold in trust for the faithful performance of this agreement the following described real estate situated in Hamilton County, Iowa, to wit:

"The north one half (N½) of the northeast quarter (N. E. ¼) of Section twenty-eight (28), Township eighty-nine (89) north, Range twenty-five (25) west of the 5th P. M., Iowa, which the parties hereto estimate to be of the value of twelve thousand dollars.

"It is understood between the. parties hereto that it is the desire of said Barrett Bibler to make suitable provisions for his said wife, in case of his death, so long as she shall live or remain

his widow, provided she continues to live with him in the manner hereinbefore provided until his death, and for that reason he makes arrangements for a suitable annual allowance, but in order that the property should not be unnecessarily tied up, it is understood and agreed between the parties hereto that the parties of the second part shall have the option of paying said Esther Bibler, at any time, the difference between the amount of said annual payments made and said sum of twelve thousand dollars, and such payment would fully complete and terminate this contract. It being fully understood and agreed between the parties hereto that should said Esther Bibler again enter into marriage relations, then and in that event the provisions herein made for her support shall terminate.

"It is further understood and agreed between the parties hereto that no other portion of the real estate of the parties of the second part is to be affected by the provisions of this contract save and except the land herein described and in case of the death of David D. Bibler, before the completion of the payments provided for by this contract, then and in that case should Essy G. Bibler then be living, she may, at her election, at any time, sell said eighty-acre tract and pay to said Esther Bibler the balance of said twelve thousand dollars then remaining unpaid, should said Esther Bibler be then unmarried and the widow of Barrett Bibler.

"It is mutually understood and agreed between all of the parties to this contract that its provisions are intended as compensation to Esther Bibler for faithfully fulfilling the obligations assumed at the marriage altar, and as a reward for her giving to Barrett Bibler that loving care and attention which will render his declining years bright and cheerful. It is mutually understood and agreed between the parties hereto that it is a provision made by a fond and loving husband for the support of her whom he may leave a widow.

"In witness whereof the parties have each affixed his or her signature hereto."

It is to be remembered that this instrument was never signed by the appellant. He recognized that, under his contract of January 11, 1916, he was under obligations to provide for his father; and certainly the fact of his procuring a proposed draft of a contract in this form to be sent to his father, followed by his

own subsequent refusal to execute the same, is not sufficient evidence to impeach his legal title to the premises in question.

The other item is in respect to a draft of a purported will, which is as follows:

"New Orleans, La. Jan. 10, 1919.

"I do hereby bequeath to my wife Mrs. Esther Bibler the north (½) one half of the northeast one forth (¼) of Sec. 28-87-25 north 5th P. M. Iowa; situated in Hamilton County— Hamilton Township Iowa, real estate:

"With these provisions:

"Two-wit: That Mrs. Bibler lives a true and dutiful wife to me (her husband Barrett Bibler) doing my lifetime. Should Mrs. Bibler outlive myself (Barrett Bibler) or should Mr. David D. Bibler (my son) choose to give my wife Esther Bibler twelve thousand dollars ($12,000) and retain this real estate mensioned in this will he may upon settling the twelve thousand mensioned in this will; with my wife Mrs. Esther Bibler. Should my wife Mrs. Esther Bibler fail to do her part as is now mensioned in this will and testament, then this will shall be null and void.

"In additional:

"Should I in the hand of Providence be permitted to live over thirty (30) years from this date

"I will and bequeath to my wife Mrs. Esther Bibler five thousand ($5,000) dollars to be paid out of the south (½) one half of the northeast (¼) one forth of Section 28-27-25 situated in Hamilton County Hamilton Township Iowa, upon same conditions as above mensioned in my first bequeath and I now have a warrantee deed filed in the county clerk's office of Hamilton County, Iowa, this now mensioned real estate being held in trust by David D. Bibler my son; this will will and shall be null and void; when the contract which was drawn up between myself and my wife Mrs. Esther Bibler on the first day of June 1918 and accepted by all parties concerned; and David D. Bibler my son took this contract to a lawyer and had him to typewrite it, and forwarded it to myself and wife to sign which we did and then back to David D. Bibler and his wife to sign and the contract has never been seen by myself nor wife since up to this date but when the contract or its equivalent be properly drawn and signed and delivered to my wife; this will; shall be null and

void upon receipt of contract being delivered to my wife Mrs. Esther Bibler.

"Barrett Bibler."

The *ex parte* recitals in this instrument executed by the said Barrett in 1919 are wholly insufficient to impeach the title of the appellant to the premises in question.

After Barrett's death, the appellee Samuel wrote to the appellant, demanding an interest in said premises or the payment of a sum of money. He was referred by the appellant to his attorney, and correspondence followed between Samuel and the attorney. The correspondence by the attorney was evasive, and did not contain a frank and candid statement of the facts, and did not refer to the execution of the deed and the contract. The failure of the attorney to make a full and fair disclosure of all of the facts within his knowledge cannot, however, affect the rights of the appellant. He should not be held to suffer from the oversight or shortcomings of his attorney in this regard. It is a proper circumstance to consider, however.

Much is made in argument of the circumstance that the contract of January 11, 1916, was not pleaded until during the trial of the cause, and then by amendment to defendant's an- swer. Whether or not counsel should have pleaded said contract as a part of the original answer in the cause was a matter of generalship in the conduct of a lawsuit. It is not a suspicious circumstance of sufficient importance to impeach the verity of the instrument so pleaded.

A Des Moines attorney was appellant's counsel, and drew the contract of January 11, 1916, and the tentative contract which was sent to Denver. He was appointed administrator of the estate of Barrett. He appeared as attorney of record in this case, and also appeared as a witness for the appellant. Counsel for the appellees criticized his testimony because of his appearance in the dual role of witness and attorney. We have unmistakably set the seal of our disapproval on an attorney's occupying such an unfortunate situation. *Alger v. Merritt*, 16 Iowa 121; *Fletcher v. Ketcham*, 160 Iowa 364; *Ross v. Ross*, 140 Iowa 51; *Hull v. Mitchell*, 181 Iowa 51. But we are dealing with the rights of third parties, and not with those of the attor-

ney, and appellant's legal rights ought not to suffer because of the failure on the part of one of his counsel to conform to the well established ethics of his profession. The situation is proper to consider as affecting the credibility of the witness. We have done so.

We have not attempted to review all of the evidence or to make specific reference to each and all of the contentions of the respective parties. The deed of Barrett to the appellant was placed of record shortly after its execution, and has stood unchallenged for these many years. During all of this time the appellant has been in possession of said farm, openly and notoriously using it as his own. He has made permanent and extensive improvements thereon, has placed mortgages on said premises now aggregating something like $23,000; a portion of his wife's money has been expended in improvements on said premises; he has paid all of the taxes; and during the lifetime of his father he contributed substantial sums to his support and maintenance. The property has increased substantially in value since it was deeded to him.

The titles to real property resting upon warranty deeds of record, followed by open and notorious occupation and assertion of title and acts of ownership, should not be easily and readily disturbed, and especially so where the attempt to overthrow such title is made after the death of the party most vitally interested therein, whose testimony as to the transaction is no longer available to either party.

We have examined the record in this case from all angles, and we cannot concur in the conclusion of the trial court. We are of the opinion that the district court should have granted the relief prayed by the appellant in his cross-petition, and quieted the title to said premises in him. The decree appealed from is—*Reversed.*

EVANS, C. J., and KINDIG and WAGNER, JJ., concur.

STEVENS, J., concurs in result.