FRED MENSING, appellant, v. GENE STURGEON et ux., appellees.

No. 49723.

(Reported in 97 N.W.2d 145)

JUNE 9, 1959.

Lundy, Butler, Lundy & Wilson, of Eldora, for appellant.

Alan Loth, of Fort Dodge, for appellees.

THOMPSON, C. J.—The rulings of the trial court were made upon an adjudication of law points arising upon the face of the pleadings. We accordingly state the facts as shown by the petition, answer and reply. They are not in dispute. The order of the trial court had the effect of barring plaintiff's cause of action upon the facts as pleaded, and we granted an appeal before final judgment.

On August 5, 1953, a collision occurred on a public highway in Wright County between a tractor owned and operated by the plaintiff and an automobile owned by the defendant Gene Sturgeon and driven at the time by his wife, the defendant Mable Sturgeon. Plaintiff's action, based upon this accident, claims damages in the sum of $3734.99. Apparently both plaintiff and defendants suffered some injuries.

A considerable time before the commencement of plaintiff's (Mensing's) action herein, the Sturgeons, the present defendants, as plaintiffs had brought suit against Mensing claiming damages from him because of the same collision referred to in Mensing's present action against them. This first action was likewise in the Wright County District Court. Original notice in this case was served on Mensing on May 3, 1954. Mensing filed no pleading, in fact made no formal appearance in the case. But on June 22, 1954, the plaintiffs (Sturgeons) executed a release to Mensing, for the recited consideration of $1000. Since the release is considered important in the case, we set it out in full.

"RELEASE OF ALL CLAIMS

"For and in consideration of the payment to me/us at this time in the sum of One Thousand and no/100 ($1,000.00) Dollars ($1,000.00), the receipt of which is hereby acknowledged, I/we, being of lawful age, do hereby release, acquit and forever discharge Fred D. Mensing and any other person, firm or corporation identified with him in interest of and from any and all actions, causes of action, claims, demands, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from an accident that occurred on or about the 5th day of August, 1953, at or near Dows, Iowa.

"I/we hereby declare and represent that the injuries sustained are permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent and duration of said injuries, and that I/we have not been influenced to any extent whatever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing him or them, or by any physician or surgeon by him or them employed.

"It is mutually understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of Fred Mensing by whom liability is expressed denied.

"This release contains the ENTIRE AGREEMENT between the parties hereto and the terms of this release are contractual and not a mere recital.

"I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our free act.

"WITNESS our hand and seal this 22nd day of June, 1954."

This release was signed and acknowledged by Gene Sturgeon and Mable Sturgeon.

The Sturgeons, in their answer in the instant case, also allege that "About June 22, 1954, he [Mensing] paid Gene and Mable Sturgeon substantial sums in settlement and induced them to release the claims and to dismiss the suit on the merits with prejudice, after the time for filing counterclaim * * * ."

While in his reply argument plaintiff-appellant Mensing says this allegation is not in the record because it was stricken, this is not correct. Another somewhat similar allegation, but referring to another case involving a different plaintiff, was stricken on motion. We think counsel has confused this allegation, and the ruling thereon, with the one above-quoted, which was not attacked.

After the settlement of June 22, 1954, and the execution of the release above set out, the Sturgeons then filed a dismissal of their pending suit against Mensing, in these terms: "Come now Gene Sturgeon and Mabel Sturgeon, plaintiffs in the above entitled action and hereby dismiss *with prejudice* [Italics supplied] their cause of action against defendant." This was duly signed by Gene Sturgeon and Mable Sturgeon and filed in the office of the clerk of Wright District Court on June 24, 1954.

The exact date of the commencement of the present action by Mensing does not appear, but it was a considerable time after he had paid the Sturgeons the sum of $1000 in settlement of their claims against him and obtained their release and the dismissal of their suit with prejudice. This statement makes apparent the question now before us: Does party defendant in a suit claiming damages arising out of a motor-vehicle collision, who does not appear in the suit or file any pleading, but who makes a settlement of the claims asserted against him and procures a full release and a dismissal of the pending action with prejudice, reserve the right to thereafter bring suit for damages he sustained in the same collision? The trial court answered in the negative, and we agree with its conclusion.

The plaintiff-appellant, Mensing, states the two propositions relied upon by the defendants-appellees to sustain the ruling of the trial court to be these: 1, R. C. P. 215 does not govern a voluntary dismissal with prejudice, and 2, the voluntary dismissal with prejudice constitutes a bar by agreement. He then attempts, in argument, to demonstrate why neither of the stated propositions is sound. Our own understanding of defendants' position, as shown by the record and arguments, is not stated by plaintiff exactly as we would put it, although, in substance, as shown by his brief, it is not materially different. It should be made clear that the first point raises the question of compulsory counterclaim; and we think it is defendants' contention with regard to the second stated proposition that it is the settlement as well as the dismissal with prejudice which bars plaintiff's claim. We shall first discuss the matter of the compulsory counterclaim.

I. The first proposition, that rule 215 does not govern a voluntary dismissal with prejudice is important because at

this point the defendants are urging a bar of plaintiff's action because of rule 29, our compulsory counterclaim rule. We set it out herewith:

"COMPULSORY COUNTERCLAIMS

"A pleading must contain a counterclaim for every cause of action then matured, and not the subject of a pending action, held by the pleader against any opposing party and arising out of the transaction or occurrence that is the basis of such opposing party's claim, unless its adjudication would require the presence of indispensable parties of whom jurisdiction cannot be acquired. A final judgment on the merits shall bar such a counterclaim, although not pleaded. [Report 1943]." The controversy in this case rages around the last sentence of the rule. It is plaintiff's argument that, in view of the language of rules 215 and 217, the dismissal of the suit brought by the present defendants, the Sturgeons, as plaintiffs, although with prejudice, was not an adjudication on the merits. We quote rules 215 and 217 following:

"Rule 215. Voluntary dismissal. A party may, without order of court, dismiss his own petition, counterclaim, cross-petition or petition of intervention, at any time before the trial has begun. Thereafter a party may dismiss his action or his claim therein only by consent of the court which may impose such terms or conditions as it deems proper; and it shall require the consent of any other party asserting a counterclaim against the movant, unless that will still remain for an independent adjudication. A dismissal under this rule shall be without prejudice, unless otherwise stated; but if made by any party who has previously dismissed an action against the same defendant, in any court of any state or of the United States, including or based on the same cause, such dismissal shall operate as an adjudication against him on the merits, unless otherwise ordered by the court, in the interests of justice. [Report 1943]."

"Rule 217. Effect of dismissal. All dismissals not governed by rule 215 or not for want of jurisdiction or improper venue, shall operate as adjudications on the merits unless they specify otherwise. [Report 1943]."

■ The universal rule is that a dismissal with prejudice is ordinarily an adjudication on the merits. Many authorities have so held. 27 C. J. S., Dismissal and Nonsuit, section 73, page 255, says "A dismissal with prejudice is an adjudication on the merits of the case." This was quoted with approval in Schuster v. Northern Co., 127 Mont. 39, 49, 257 P.2d 249, 254, and in DeGraff v. Smith, 62 Ariz. 261, 269, 157 P.2d 342, 345. See also Pulley v. Chicago, Rock Island & Pacific Ry. Co., 122 Kan. 269, 251 P. 1100, 1101; Lake v. Wilson, 183 Ark. 180, 194, 35 S.W.2d 597, 602, 38 S.W.2d 25 ("A dismissal with prejudice is as conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff."); Mayflower Industries v. Thor Corp., 17 N. J. Super. 505, 86 A2d 293, 296; Hannibal v. St. Louis Public Service Co., Mo. App., 200 S.W.2d 568, 571; Gonzalez v. Gonzalez, 6 Ill. App.2d 310, 127 N.E.2d 673, 675; Virginia Concrete Co. v. Board of Supervisors, 197 Va. 821, 91 S.E.2d 415, 419, 56 A. L. R.2d 1283; Creek Indians National Council v. Sinclair Prairie Oil Co., 10 Cir., Okla., 142 F.2d 842, 845; Sears v. De Mota, 157 Cal. App.2d 216, 320 P.2d 579, 582. In Steele v. Beaty, 215 N. C. 680, 683, 2 S.E.2d 854, 856, the rule is thus stated: "Where the parties to an action have settled their dispute and agreed to a dismissal such dismissal is a retraxit and amounts to a decision upon the merits." (Citing authorities)

Indeed, it seems fair to say that the usual effect of a dismissal with prejudice as being a final adjudication on the merits is not denied by the plaintiff. But it is urged that our compulsory counterclaim rule, No. 29, supra, is effective only when there has been a final adjudication on the merits, and that rules 215 and 217, supra, require a definite interpretation that under them a dismissal, though with prejudice, is not such a final adjudication. The argument is that rule 215 provides for voluntary dismissals which shall be without prejudice "unless otherwise stated"; and that the only form of voluntary dismissal which might be "otherwise stated" is a dismissal *with* prejudice. So it is urged that both voluntary dismissals without and with prejudice are "governed" by rule 215. Adverting then to rule 217, it is pointed out that it provides "All dismissals not governed by rule 215 *** shall operate as adjudications on

the merits." But, goes the argument, a voluntary dismissal with prejudice is governed by rule 215, and so is not an adjudication on the merits. It is only in a negative way that such a dismissal is excluded as an adjudication on the merits; but we pass that point as unnecessary to be discussed.

We think the plaintiff is mistaken in assuming that a dismissal with prejudice under the circumstances shown here is such a "voluntary" dismissal as is contemplated by rule 215. It is not "governed" by the rule. It was not, in fact, a "voluntary" dismissal. Voluntary dismissals within the purview of rule 215 are those made without compulsion or order of court. Rule 215 is primarily intended to give a litigant a right to dismiss without the consent of the court or the opposing party, and to define when he may do this. But in the case at bar the plaintiff, as defendant in the prior case, bargained for a settlement of the claims made by the present defendants, as plaintiffs in the first case, against him. He paid them a substantial sum of money and procured a full release. This meant that their claim was no longer in existence; their cause of action was no longer a subsisting one. They had no choice other than to dismiss their case with prejudice; that was the very thing for which Mensing had bargained. If they had not dismissed, Mensing could have forced a dismissal by the court; and if they had thereafter attempted to assert their claim we may be certain he would have set up the settlement and dismissal with prejudice as a full defense; and so it would have been. We find nothing in rule 215 which abrogates the well-settled principle that a dismissal with prejudice is a final adjudication on the merits. We conclude that a dismissal with prejudice following and in accord with an agreed settlement is not "governed" by rule 215; and we hold that the dismissal here was a final adjudication on the merits.

Having reached this determination, it must follow that rule 29, the compulsory counterclaim rule, governs the instant case and supports the holding of the trial court. No counterclaim was filed by Mensing in the suit brought by the Sturgeons, although he had the opportunity to do so. Instead he elected to make a settlement with them and procure a dismissal with prejudice. His possible counterclaim, arising out of the same facts relied upon by the Sturgeons, was then barred by rule

29. It was then matured; it was not the subject of a pending action; it was held by him against the opposing parties; and it did not require the presence of indispensable parties of whom jurisdiction could not be acquired. In re Hoelscher's Estate, 249 Iowa 444, 450, 87 N.W.2d 446, 450. To the same effect are Shrieves v. Yarbrough, 220 Ark. 256, 247 S.W.2d 193, 194, Keller v. Keklikian, 362 Mo. 919, 244 S.W.2d 1001, 1005, and Schott v. Colonial Baking Co., 111 F. Supp. 13, 19; in all of which the facts were closely like those in the case at bar in that the present defendant had first sued the present plaintiff on an alleged cause of action growing out of an automobile collision, and after a dismissal with prejudice the first defendant, who had interposed no counterclaim, then attempted to assert a cause of action against the first plaintiff because of the same accident. It was held barred by a compulsory counterclaim statute in each case.

A distinction is made in Heinemann Creameries, Inc., v. Milwaukee Automobile Ins. Co., 270 Wis. 443, 71 N.W.2d 395, 398, between the situation in jurisdictions which have compulsory counterclaim statutes, or Rules of Civil Procedure, and those in which the filing of a counterclaim is permissive rather than mandatory. The Wisconsin Supreme Court points out that in that state counterclaims are permissive, and so the failure to file in the original suit does not bar the claim. Reference is correctly made to Keller v. Keklikian, supra, as involving a compulsory counterclaim statute. Iowa is in the class of jurisdictions in which counterclaims are mandatory. In fact, we think the situation shown in the case at bar well illustrates the need for, and reason of, the rule.

II. We turn then to defendants' second proposition for sustaining the ruling of the trial court, which, as stated by the plaintiff, is that "the voluntary dismissal with prejudice constitutes a bar by agreement." We think the point is made somewhat clearer by inserting the words "after settlement and release" so that the stated proposition is "the voluntary dismissal with prejudice after settlement and release constitutes a bar by agreement." With this we are also in accord.

It will be noted that instead of appearing and setting up any defenses or counterclaims that he might have, Mensing

elected to settle the original action by payment of the sum of $1,000. He thereby procured a dismissal with prejudice; and more than that, he barred the Sturgeons from asserting any further claim against him. So, if he were permitted to prosecute the instant suit, he would be secure from any counterblows. The Sturgeons might defend, but they could not counterclaim. The plaintiff would have his adversaries in the position of a boxer who must fight only by parrying the blows aimed at him, but is not permitted to strike back. He says the defendants should have protected themselves against such a possibility by requiring him to release all claims against them as part of the settlement; and, since they did not do so, they must now defend as best they can.

Fortunately we are not without precedent for this situation; and fortunately, we think, for the reputation of the law for fairness and insistence upon fair dealing, the authorities hold that plaintiff's action is barred by agreement. The matter is thoroughly discussed in Heinemann Creameries, Inc., v. Milwaukee Automobile Ins. Co., supra. There is a further report of this case in 270 Wis. 443, 72 N.W.2d 102, when the matter was again before the court upon petition for rehearing, which was denied. In this case one Tronca brought suit against the Heinemann Company for damages sustained in a collision between his truck and a truck owned by the Heinemann Company. Before an answer was filed, the defendant settled with Tronca by paying him $150 and taking a release from him running to itself, its driver and its insurance carrier, and containing this language which we quote because of its similarity to that used in the case at bar and upon which the plaintiff here relies: "'It is further agreed and understood that said payment is not to be construed as an admission of any liability.'"

The Wisconsin court held that the settlement and release were a bar to any action by the defendant in the first case. It considered and quoted with approval from Kelleher v. Lozzi, 7 N. J. 17, 80 A.2d 196, 199; and also cited Giles v. Smith, 80 Ga. App. 540, 56 S.E.2d 860. In its consideration of the Heinemann case, supra, upon rehearing, 270 Wis. 452a, 452b, 72 N.W.2d 102, 103, the court used this pertinent language: "We consider the better rule to be that the making of the original settlement with-

out any express reservation of rights by the settlor constitutes a complete accord and satisfaction of all claims of the immediate parties to the settlement arising out of the same accident." The court, in its original opinion, page 451 of 270 Wis., page 399 of 71 N.W.2d, took note of the recital of nonliability of the settlor in the release, which was identical in substance with the same clause in the release given by Sturgeons to Mensing. It is the plaintiff's argument that since the release expressly said that it was not an admission of liability on the part of Mensing, but was expressly denied by him, Kelleher v. Lozzi, supra, is not in point. In that case the release, so far as shown, did not contain a disclaimer of liability on the part of the settlor. The Wisconsin Supreme Court, after noting this same factual difference between its Heinemann case and the Kelleher case, said: "We do not deem that such recital of nonliability should be held to override the inference to be drawn from the act of the plaintiff *** in paying damages to Tronca, that the *** company had no claim against Tronca arising out of the accident."

We are in agreement with the analysis of the Wisconsin court. As the plaintiff here urges, the question is primarily one of intent; what did the parties mean to accomplish by their settlement of the Sturgeons' claims by the payment made by Mensing? We think the intent shown is a complete settlement of all claims and cross-claims between the parties. It seems inconceivable that Mensing, feeling that the Sturgeons were indebted to him in the sum of several thousand dollars, as he now asserts, and further believing himself to have been without fault and the Sturgeons solely to blame in causing the accident, would have consented to pay them $1000 or any other sum. He would have said, "You are indebted to me; I owe you nothing." As the Georgia Court of Appeals well said in Giles v. Smith, 80 Ga. App. 540, 543, 56 S.E.2d 860, 862: "It would be anomalous indeed for the plaintiffs to pay Jackson the $275 and then sue him to recover the very money that they had paid him." This case is exactly in point factually with the one now before us.

So also, except for the nonadmission of liability clause in the release, which we have commented upon above, is Kelleher v. Lozzi, supra. There after a collision between their respective automobiles, Lozzi sued Kelleher. Before trial, Kelleher paid

Lozzi $550 in settlement of his claim, and took his release and a dismissal of his action. Later Kelleher commenced an action against Lozzi. The New Jersey Supreme Court held that under their rules the filing of a counterclaim by Kelleher in the first case was permissive rather than mandatory, but it said "this construction, as we shall see, is not dispositive of the appeal," page 23 of 7 N. J., 80 A.2d at page 198. The court then proceeded to hold that the settlement in itself, with the following dismissal of Lozzi's action, barred Kelleher's claim, which had not been asserted in the first case. It held this (page 24 of 7 N. J., page 199 of 80 A.2d): "It is logically and factually impossible to reconcile a valid claim by Kelleher with a valid claim by Lozzi. As Kelleher by her act acknowledged a valid claim by Lozzi and effected a settlement on that basis, we are brought to the conclusion that she estopped herself from taking the opposite position; that consequently she, in her own suit, has failed to state a claim upon which relief can be granted; *** "

So with the case now before us. Valid claims of Mensing and, at least of Mable Sturgeon, the driver of the colliding car, could not both exist. Although the release recited that it should not be construed as an admission of liability on the part of Mensing, the act of payment in itself shows the intent of the parties that all causes of action between them were concluded. We take no issue with the authorities cited by the plaintiff relating to the statement in the release that it contains the entire agreement between the parties; we are construing the agreement with all proper inferences arising just as did the Wisconsin, New Jersey and Georgia courts in the cases cited above. To the same effect is McKnight v. Pettigrew, 141 W. Va. 506, 91 S.E.2d 324, where the rule that a settlement of one claim bars cross-claims in the absence of an express reservation was recognized and upheld. We agree with the reasoning of these courts.

The Wisconsin and New Jersey courts, in Heinemann Creameries, Inc., v. Milwaukee Automobile Ins. Co. and Kelleher v. Lozzi, both supra, referred to the bar of the plaintiffs' claims as being based on estoppel arising through the prior settlement. It is true the defendants here have not in terms asserted an estoppel; but they have pleaded facts giving rise

thereto. This is sufficient. It is not necessary to use the specific word "estoppel" or "estopped." Bibler v. Bibler, 205 Iowa 639, 646, 647, 216 N.W. 99, 102. The matter has been fully argued by all parties. And even though an estoppel were not properly pleaded, we think the bar to plaintiff's action arises clearly through the settlement agreement. It is a matter of contract. The ordinarily reasonable and reasoning man occupying the position of the Sturgeons at the time they accepted a settlement of their claim and executed the release and dismissal of their suit would think the entire matter was settled. He would not expect the defendant to pay him money in satisfaction of his claim and then sue him upon a cross-claim. No reason appears why the defendant should pay money to the plaintiffs when he felt they were actually indebted to him. We think Mensing must be held to have had the same idea of full settlement as the plaintiffs; that would be the reasoning of the average man. If Mensing had a mental reservation, if he in fact intended to settle with Sturgeons for a comparatively small amount so that he could then sue them for a much larger sum without danger of counterattack, fair dealing required that he should have made it known. We accept the contention of his counsel that the settlement and release are to be construed according to the intent of the parties; and we will not so impugn their client's motives as to read into what he did a secret intention to force his opponents to play a game in which they would be in the field at all times, with never a turn at bat or an opportunity to make a score and the best they could possibly hope for would be a scoreless tie.

His argument now is that he paid $1000 for the right to conduct the contest in that manner. If he had such an intention, honesty required that he make it clearly known.

It should be stated that none of the attorneys engaged in this appeal was in the matter at the time of the original settlement or of the commencement of the second case by Mensing, the one now before us.

For the reasons set out in Divisions I and II we must agree with the ruling of the trial court.—Affirmed.

All JUSTICES concur.