# IN THE COURT OF APPEALS OF IOWA

No. 3-1182 / 13-1000
Filed March 26, 2014

ERIC KAFTON and
AMANDA KAFTON,
        Plaintiffs-Appellants,
vs.

ROBERT MERCHANT JR., d/b/a
R.A.M. CONSTRUCTION,
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Monona County, John D.

Ackerman, Judge.


        Homeowners appeal the district court's ruling on cross motions for

summary judgment. **AFFIRMED IN PART, REVERSED IN PART, AND**

**REMANDED FOR DISMISSAL.**


        Michael P. Jacobs of Rawlings, Ellwanger, Jacobs, Mohrhauser & Nelson,

L.L.P., Sioux City, for appellants.

        Thomas J. Culhane of Erickson & Sederstrom, P.C., Omaha, Nebraska,

for appellee.


        Heard by Vogel, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

We are asked to decide if homeowners Eric and Amanda Kafton may bring a negligence suit against the contractor they hired to dig their basement after they paid him "settlement funds" to lift a mechanic's lien against their property. After receiving a letter from the Kaftons listing complaints about his work on their home, Robert Merchant (doing business as R.A.M. Construction) filed a mechanic's lien of $25,933 on their property for the remaining amount due under the contract. After back-and-forth negotiations, Merchant released the lien as the Kaftons delivered him a check for $20,000.

Eight months later, the Kaftons sued Merchant, alleging he negligently damaged their property during the construction. Merchant answered and filed a counterclaim, alleging the Kaftons breached the contract and still owed him $4,029.95. Both parties filed motions for summary judgment. The district court granted Merchant's motion for summary judgment, holding "as a matter of law the Kaftons' intent was to enter a global settlement" of all claims arising from the excavation work. The district court overruled the Kaftons' motion for summary judgment on Merchant's counterclaim. On appeal, the Kaftons ask for their negligence claims to be reinstated and for Merchant's counterclaim to be dismissed.

Like the district court, we find ourselves bound by the reasoning in *Mensing v. Sturgeon*, 97 N.W.2d 145, 151 (1959), where the court held a settlement without any express reservation of rights by the settlor constitutes a complete accord and satisfaction of all claims arising from the same set of facts. Accordingly, we affirm the grant of Merchant's motion for summary judgment on

the Kaftons' negligence claims, reverse the denial of the Kaftons' motion for summary judgment on Merchant's breach-of-contract counterclaim, and remand for dismissal of the counterclaim.

## I.     Background Facts and Proceedings

In July 2011, the Kaftons entered a contract with Merchant to dig out the basement beneath their home, which was originally built in 1884.  The process included jacking up the house, excavating the earth below, pouring new concrete footings, and building new basement walls.  Merchant completed the project in October 2011, and submitted a final invoice dated November 2, 2011, for $27,088.

On November 22, 2011, the Kaftons sent an email to Merchant communicating their displeasure with the work done and disputing the amounts owed on the invoice.  Their complaints included a longer-than projected completion time, daily mess and safety issues, backfill of only three-quarters of the house, uneven wall and floor heights, and damage to an industrial fan lent to Merchant, furnace wire, and their septic system.

On December 2, 2011, Merchant filed a mechanic's lien in the amount of $25,933, which he alleged represented the amount remaining unpaid on the Kaftons' account.

Through counsel, the Kraftons responded in a letter dated December 19, 2011, stating:

> I represent Eric and Amanda Kafton.  I have reviewed the Mechanic's Lien and your letter of December 12, 2011.  I have also reviewed the Kaftons' line item by line item dispute regarding the invoice plus their itemization of issues and damages and expenses they suffered as a result of the work of RAM Construction.  Clearly,

some or all of these issues will result in an offset of the amount [you claim] in favor of the Kaftons. In the interest of compromise and settlement, they are willing to pay $17,873.10 in exchange for a full and final release, including, obviously, a release of the Mechanic's Lien.

In a January 4, 2012 letter, Merchant's attorney countered:

Be advised, that my client continues to deny a majority of the issues, damages and expenses claimed by your clients. It is evident to my client that the Kaftons used his original bid to obtain a bank loan to pay for the construction cost. During the construction the Kaftons experienced problems with their septic system, due to no fault of my client, and required funds to address the septic issue. Now the Kaftons are attempting to create issues and blame my client for the septic problem to reduce his bill and pay for the outstanding construction costs and septic expenses out of the total amount of loan funds.

Merchant's attorney continued:

My client is unable and unwilling to accept the settlement amount stated in your letter as this would require him to take a loss on the project. However, in the interest of resolving this matter, my client will split the difference and accept payment in the amount of $21,903.05 for full satisfaction on account and release the mechanic's lien.

On January 6, 2012, Merchant's attorney sent an email to the Kaftons' attorney proposing to release the mechanic's lien upon receipt of $20,000 in "settlement funds." In a reply email, the Kaftons' attorney wrote: "The release is acceptable." That email also noted the time the client would drop off the certified check for $20,000. The mechanic's lien release stated: "The Claimant, for valuable consideration, acknowledges full and final satisfaction of the amount claimed in the Mechanic's Lien and releases and discharges such lien against the above-referenced property."

On September 10, 2012, the Kaftons filed a petition alleging Merchant was negligent in his work, and his negligence caused damage to their property,

including the septic tank, an industrial fan, furnace wire, and other personal property. The petition also alleged: "Defendant's negligence resulted in a foundation that is uneven and unstable which is resulting in water intrusion and damage to the upper floors of the residence."

On September 28, 2012, Merchant filed an answer and counterclaim. As affirmative defenses, Merchant asserted the Kaftons' cause of action was barred due to accord and satisfaction, release, discharge, and estoppel. Merchant also filed a counterclaim, alleging the Kaftons failed to pay the amount agreed to in the contract and owed him a balance of $4,029.95.

Both parties filed motions for summary judgment. In support of his motion, Merchant presented an affidavit swearing he authorized release of the mechanic's lien because "he was under the impression that all present and future disputes between the parties relating to [his] work on Plaintiffs' home were forever compromised and settled." In resistance to Merchant's motion for summary judgment, Amy Kafton presented an affidavit avowing she and her husband found the January 6, 2012, release of the mechanics lien "to be acceptable in part, because it did not require us to release or waive any of our claims for past or future damages. . . . Defendant never asked for nor did we ever sign anything releasing any of our claims against Defendant."

On May 24, 2013, the district court granted Merchant's motion for summary judgment on the Kaftons' negligence claims, and overruled the Kaftons' summary judgment motion on Merchant's counterclaim. The Kaftons now appeal.

**II.    Standard of Review**

We review the district court's ruling on motions for summary judgment for correction of errors at law.  *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500–01 (Iowa 2014).  Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Id.*  In ruling on a summary judgment motion, the court must look at the facts in a light most favorable to the party resisting the motion.  *Peak v. Adams*, 799 N.W.2d 535, 542–43 (Iowa 2011) (internal citations omitted).  The court must also consider, on behalf of the nonmoving party, every legitimate inference that can be reasonably deduced from the record.  *Id.*  An inference is legitimate if it is "rational, reasonable, and otherwise permissible under the governing substantive law."  *Butler v. Hoover Nature Trail, Inc.,* 530 N.W.2d 85, 88 (Iowa Ct. App. 1994).  On the other hand, an inference is not legitimate if it is "based upon speculation or conjecture."  *Peak*, 799 N.W.2d at 543.  If reasonable minds can reach different resolutions, a fact question exists.  *See Estate of Anderson ex rel. Herren v. Iowa Dermatology Clinic, PLC*, 819 N.W.2d 408, 414 (Iowa 2012).

**III.    Analysis**

The Kaftons challenge the district court's grant of summary judgment to Merchant on their negligence claims and the denial of their motion for summary judgment on his breach-of-contract counterclaim.  They argue no factual issue exists regarding Merchant's intent to release his mechanic's lien against their property, but a factual question does exist as to whether they intended to release

their negligence claims against Merchant. They insist the issue of their intent should be decided by a jury.

Merchant defends the grant of his motion for summary judgment, contending the district court properly interpreted *Mensing*, 97 N.W.2d at 151–52, as barring the Kaftons' negligence claims under the doctrine of accord and satisfaction.[1] Merchant maintains when the Kaftons paid him $20,000 in return for his release of the mechanic's lien he was entitled to believe all the claims they had negotiated were settled, absent any express reservation of the negligence claims by the Kaftons. *See Mensing*, 97 N.W.2d at 151 ("The ordinary reasonable and reasoning man occupying the position of the Sturgeons at the time they accepted a settlement of their claim and executed the release and dismissal of their suit would think the entire matter was settled.").

Because the district court found *Mensing* dispositive of the issue before it, we turn first to that case. *Mensing* involved a car accident where both parties suffered injuries. The Sturgeons sued Mensing and later filed a written "Release of All Claims" in return for receipt of $1000 from Mensing; the Sturgeons then dismissed their suit with prejudice. *Mensing*, 97 N.W.2d at 920–21. A considerable time after he paid the Sturgeons in settlement of their claims against him, Mensing filed his own suit against the Sturgeons. The supreme court decided Mensing did not reserve the right to bring suit for damages sustained in the same collision. *Id.* at 147. The court decided the entry of a

---

[1] An "accord and satisfaction" is a method for parties to discharge a claim: the "accord" is their agreement to exchange something of value to settle the claim and the "satisfaction" is the execution of that agreement. *Holm v. Hansen*, 248 N.W.2d 503, 506 (Iowa 1976). Essentially, the parties substitute a new contract for the old contract. *Id.*

comprehensive settlement without any express reservation of rights by Mensing constituted a complete accord and satisfaction of all claims of the parties arising from the same accident. *Id.* at 150.

The district court found the instant facts controlled by *Mensing*.

> In *Mensing* there were two parties disputing damages, the defendants [Sturgeons] filed suit, executed a release that the plaintiff [Mensing] did not sign, and the plaintiff [Mensing] paid money for the defendants [Sturgeons] to release the claims they had against the plaintiff [Mensing]. The plaintiff [Mensing] sought additional damages in court that the accord and satisfaction barred. All of these facts are present in the case at bar and there is no way to distinguish this case from Mensing.

Both in the district court and on appeal, the Kaftons attack the reasoning in *Mensing* and contend subsequent cases have diminished its potency. Notably, in their appellate routing statement, the Kaftons asked the supreme court to retain their case because proper resolution would require the court to "distinguish, severely limit, or overrule" *Mensing*. Because the supreme court transferred the case to our court, the Kaftons' only remaining strategy is to distinguish *Mensing*. *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) (noting court of appeals is not at liberty to overrule supreme court precedent).

To distance their situation from *Mensing*, the Kaftons rely primarily on *Robinson v. Norwest Bank*, 434 N.W.2d 128, 130 (Iowa Ct. App. 1988), where our court found the parties' intent to enter an accord and satisfaction was a jury question. In that case, bank customers personally guaranteed loans to the businesses they owned. *Robinson*, 434 N.W.2d at 128. When the liquidated assets of the business were insufficient to satisfy the debt, the bank entered

negotiations with the Robinsons. *Id.* at 129. The resulting written agreement contained "no language releasing plaintiffs' claims against the defendant." *Id.* The Robinsons sued the bank for breach of a fiduciary relationship and the bank moved for summary judgment arguing the negotiations and agreements constituted an accord and satisfaction. *Id.* We decided:

> The bank's claim for a judgment on the notes can exist at the same time claims can exist by plaintiffs for the breach of certain duties on the part of the bank. A judgment against each by the other, the bank against plaintiffs on the note and the plaintiff against the bank for breach of fiduciary duty, while operating as a setoff one against the other, can coexist.

*Id.* at 130.

Unwilling to apply the *Mensing* rationale to the plaintiffs' separate and unnegotiated claims against the bank, *Robinson* stated whether an accord and satisfaction has been reached "ordinarily involves a pure question of intention" to be resolved by a jury. *Id.*

In this case, the district court rejected the comparison to *Robinson*. It decided the matters addressed in the negotiations leading up to the $20,000 settlement and the negligence claims in the Kaftons' petition originated from the same set of facts. "Plaintiffs' claims in the case at bar are not 'separate and distinct' from the settlement. The settlement and the additional claims brought by the Kaftons deal with the amount owed on the R.A.M. invoice and come from the same set of facts." We agree with the district court.

*Mensing* applies to situations, like the one before us, where a party has bargained for a general release of claims against it and implicit in the bargain of accord and satisfaction is a reciprocal release of its own claims. The idea is to

promote honesty and fair dealing by requiring the party procuring the settlement to make explicit any wish to preserve offsetting claims before paying for the other side's release of its claims. *See Mensing*, 97 N.W.2d at 150; *see also State v. Driscoll*, 839 N.W.2d 188, 191–92 (Iowa 2013) (concluding criminal defendant was entitled to restitution setoff for payments to victim's estate as part of civil release because preclusive effect could be determined from what the parties intended to be accomplished by settlement); *Peak v. Adams*, 799 N.W.2d 535, 544 (Iowa 2011) (interpreting settlement agreement as showing parties' mutual intent as a matter of law); *Brown v. Hughes*, 99 N.W.2d 305, 308 (1960) ("The release from defendant was bargained for, made, and accepted. Its validity is not questioned. The plaintiff cannot now be heard to say that he had an undisclosed intention to reserve the right to maintain his own cause of action.").

By contrast, the record in *Robinson* did not reveal the Robinsons' intent to settle their claims against the bank when negotiating the amount they owed on the loans. The Robinsons were not required to expressly reserve their tort claims because those claims were separate and distinct from the settlement. *Id.* at 130. Similarly, in *Verne R. Houghton Ins. Agency, Inc. v. Orr Drywall Co.*, 470 N.W.2d 39, 42 (Iowa 1991), the supreme court decided it could not conclude as a matter of law that a bad faith tort claim arose out of the same facts as the policyholder's release when the record was "replete with exchanges, negotiations and actions by the parties in connection with the settlement which support Orr Drywall's contention that the parties intended to settle only the contract claim, not the tort claim." Likewise in *Holm v. Hansen*, 248 N.W.2d 503, 507–09 (Iowa 1976), the court found a livestock purchaser could not decipher seller's intent to include the

possibility of future loss from disease in their agreement when they only discussed what it would take to settle the matter of two cows infected with brucellosis.

In this case, the district court was justified in looking to the series of negotiations between the Kaftons and Merchant to determine whether the parties' intent could be determined as a matter of law.  Settlement agreements are essentially contracts and courts may apply legal principles applicable to contract law when interpreting them.  *Waechter v. Aluminum Co. v. America*, 454 N.W.2d 565, 568 (Iowa 1990).  When interpreting contracts, courts may look to extrinsic evidence, including "preliminary negotiations and statements made therein."  *See Peak*, 799 N.W.2d at 544.  Evidence of preliminary negotiations enables the court to understand the subject matter of the agreement as contemplated by the parties.  *See* 17A C. J. S. Contracts § 424 (2014).

Negotiations started with the Kaftons' November 22, 2011 email, which provided a detailed accounting of their disputes about the charges in Merchant's final $27,088 invoice.  The Kaftons specifically included a list of damages and expenses they allegedly incurred to their property, including an industrial fan, furnace wire, and septic system—the same items later listed in their negligence lawsuit.  The Kaftons wrote: "The work performed at our house was less than satisfactory. . . . We are not paying for mistakes made by you . . . ."

Merchant responded twenty days later by filing a mechanic's lien for $25,933.  A letter to the Kaftons from Merchant's attorney said the amount was "adjusted to reflect any and all disputes between the parties."

A week later, the Kaftons' attorney responded with a letter again referencing the damages suffered by his clients as a result of the construction work. The letter predicted "some or all of these issues will result in an offset of the amount claimed in favor of the Kaftons." The attorney wrote that in the interest of "compromise and settlement" the Kaftons offered to pay $17,873.10 "in exchange for a full and final release, including, obviously a release of the Mechanic's Lien."

About two weeks later, Merchant's attorney responded in a letter emphasizing his client denied causing the alleged damages, especially those to the Kaftons' septic system. The January 4, 2012, letter said Merchant was not willing to accept the Kaftons' proposal because he would take a "loss on the project." Merchant's attorney counter offered $21,903.05 for "full satisfaction on account and release of the mechanic's lien."

The record does not reveal the contents of any oral communications the parties had the following day, but on the morning of January 6, 2012, they exchanged emails in which Merchant agreed to release the mechanic's lien in return for the Kaftons' delivery of "settlement funds" in the form of a certified check for $20,000. The Kaftons stated the release was "acceptable."

Their correspondence shows the parties contemplated the settlement would embrace the Kaftons' negligence claims. The Kaftons introduced their negligence claims in their original communication and proposed offsetting those damages in their request for Merchant to release the mechanic's lien. The only part of the settlement proposal rejected by Merchant was the dollar figure that the Kaftons were willing to pay. No fact finder could rationally conclude the

Kaftons—after paying Merchant $20,000 to release the lien "in full and final satisfaction of the amount claimed"—would reasonably believe Merchant still owed them money for negligently damaging the property discussed in their negotiations.

Furthermore, we do not find a fact question was generated by Amy Kafton's affidavit expressing her subjective belief that acceptance of the release of the mechanic's lien did not require them to release their negligence claims. In searching for evidence of the parties' intention, "we look to what the parties did and said, rather than to some secret, undisclosed intention they may have had in mind, or which occurred to them later." *See Waechter*, 454 N.W.2d at 568–69. At best, the Kaftons had "an undisclosed unilateral intent to reserve the right to sue" Merchant. *See Peak*, 799 N.W.2d at 544.

Under the economic loss doctrine, a recovery in tort law was not available for the Kaftons' unfulfilled expectations concerning the quality of Merchant's construction work. *See Determan v. Johnson*, 613 N.W.2d 259, 260–61, 263 (Iowa 2000) (holding plaintiff's damages in the form of expenses to repair defects in her home's construction fell under contract law). The Kaftons' viable negligence claims, alleging Merchant damaged their property, could have coexisted with the separate contract claim, as was the situation in *Robinson*, if both types of claims had not been intermingled in the parties' negotiations. Given the meshing of the tort and contract claims, it was natural for Merchant to believe by releasing the mechanic's lien for an amount less than the contract price, the parties were settling the entire matter. *See Mensing*, 97 N.W.2d at 151.

In a final attempt to cabin the rationale of *Mensing*, the Kaftons argue: "The damages caused by Merchant were not the result of a single, isolated, incident similar to a motor vehicle accident. The dispute between Kafton and Merchant arises out of a number of things that occurred during the course of their relationship." But "reciprocal claims in a contract dispute are every bit as closely intertwined as are the mutual allegations in a motor vehicle accident dispute that each driver caused the other's injuries." *See Cyr v. Cyr*, 560 A.2d 1083, 1084 (Me. 1989) (finding rationale behind the rule in *Mensing* persuasive). We agree with the district court's conclusion that the language used by the Kaftons in negotiations would have prompted a reasonable person to believe they intended to reach a full accord and satisfaction of their claims. The parties negotiated and reached a global settlement. We affirm the grant of summary judgment to Merchant on the Kaftons' negligence claims, reverse the denial of the Kaftons' motion for summary judgment on Merchant's breach-of-contract counterclaim, and remand for dismissal of the counterclaim.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR DISMISSAL.**