LEROY BROWN, appellee, v. WILFRED HUGHES, appellant.

No. 49769.

(Reported in 99 N.W.2d 305)

NOVEMBER 17, 1959.

REHEARING DENIED FEBRUARY 11, 1960.

O'Connor, Thomas, McDermott & Wright, of Dubuque, for appellant.

Kenline, Roedell, Hoffmann & Reynolds, of Dubuque, for appellee.

THOMPSON, J.—On June 30, 1956, a collision occurred between a motorcycle owned and driven by the plaintiff and an automobile owned and operated by the defendant. The accident happened on U. S. Highway No. 52 about 13 miles northwest of Dubuque, at approximately 6:15 p.m. The vehicles were going in opposite directions, and the cause of the collision is in dispute. It is evident at least one of them must have failed to yield one half of the paved highway. The visibility was good and no other traffic was involved. Plaintiff brought suit for his damages, and a jury verdict was returned in his favor in the sum of $28,000. Defendant's motions for judgment notwithstanding verdict and in the alternative for a new trial were denied, and he brings this appeal.

I. Several grounds are urged by the defendant in support of his claim of error on the part of the trial court in overruling his motion for judgment notwithstanding verdict, and others are argued in connection with the motion for new trial. We find it necessary to consider only assigned error No. III, which is thus stated: "III. The court erred in failing to sustain defendant-appellant's motions for directed verdict and for judgment notwithstanding the verdict on the ground that plaintiff-appellee Brown is barred and estopped from maintaining his cause of action for personal injury against appellant Hughes by reason of appellee Brown's payment of Three Hundred Dollars to appellant Hughes for a release from appellant Hughes."

The plaintiff suffered personal injuries in the collision and was for some time in a hospital at Dubuque. He had no public liability insurance on his motorcycle, but did have such insurance on an automobile which he owned. While he was in the hospital, shortly after the accident, he requested his wife to ask Robert L. Oeth, an attorney practicing in Dubuque, to call on him. Mr. Oeth did so. After discussing the facts with the defendant, Mr. Oeth concluded "that the liability, if any, was with Mr. Brown." There was also some discussion as to the effect of the Iowa Motor Vehicle Financial Responsibility Act, chapter 321A, Code of 1958. Mr. Oeth testified: "* * * I left there with the understanding that I was to investigate the damages to the automobile involved in the collision. That is, by that time they had been informed as to the amount of the damages, they felt the amount was high, and they wanted me to investigate as to whether this amount was reasonable."

As a result of Mr. Oeth's investigation and some conferences he held with agents representing the defendant, Hughes, whose automobile had been damaged, an agreement was reached that the plaintiff should pay Hughes the sum of $300 in settlement of his claim for such damages. The agreed amount represented a reduction of Hughes' original demand. Mr. Oeth kept the plaintiff and his wife advised of the progress of negotiations, and when an agreement had been reached $300 was borrowed from Mrs. Brown's mother, was delivered to Oeth and by him to Hughes or his representatives. In return, Hughes executed a

release, known in the record as Exhibit "B". It is in these words and figures:

"RELEASE OF ALL CLAIMS. KNOW ALL MEN BY THESE PRESENTS: That the undersigned, being of lawful age, for the sole consideration of ($300.00) Three Hundred dollars no cents—to the undersigned in hand paid, receipt whereof is hereby acknowledged, do/does hereby and for my/our/its heirs, executors, administrators, successors and assigns release, acquit and forever discharge ~~W. R. Hughes~~, Le Roy Brown, Jr. and his, her, their, or its agents, servants, successors, heirs, executors, administrators and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/ have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 30 day of June 1956 at or near Dubuque, Iowa.

"It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released, and that said releasees deny liability therefor and intend merely to avoid litigation and buy their peace.

"The undersigned hereby declare(s) and represent(s) that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and in making this Release it is understood and agreed, that the undersigned rely(ies) wholly upon the undersigned judgment, belief and knowledge of the nature, extent, affect(sic) and duration of said injuries and liability therefor and is made without reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed.

"The undersigned further declare(s) and represent(s) that no promise, inducement or agreement not herein expressed has

been made to the undersigned, and that this Release contains the entire agreement between the parties hereto, and that the terms of the Release are contractual and not a mere recital.

"THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT.

"Signed, sealed and delivered this 2 day of August 1956

"CAUTION: READ BEFORE SIGNING BELOW:

"s/  E. G. Forward.—
_____
        Witness                         x  s/    W. R. Hughes          LS
                                        Iowa Home Mutual Cas. Co.
                                        by Art Sutten, Adjuster"

By amendment to his answer, adding Division III thereto, the defendant raised the question of the effect of the foregoing payment and release. He alleged that they constituted a bar to plaintiff's action and an accord and satisfaction; and further that through them the plaintiff was estopped to maintain his suit. This contention was kept constantly before the trial court at all stages of the proceedings, and the court as constantly ruled against the defendant. The question was raised by an application for adjudication of law points, under Rule of Civil Procedure 105; by motion for directed verdict, and by motion for judgment notwithstanding verdict. We think defendant's position was sound, and the court was in error in holding otherwise.

■ II. It must be kept in mind that at the time this case was tried we had not yet decided Mensing v. Sturgeon, 250 Iowa 918, 97 N.W.2d 145. The trial court did not have the benefit of that opinion. But Division II of the Mensing opinion discusses a state of facts substantially the same as those now before us, and requires a holding for the defendant. In short, the Mensing case decides that one who has been involved in an automobile collision in which both parties suffer injuries, and who elects to settle the opposing claim and to buy a release from the other party will thereby be held to have elected to compromise the entire controversy, absent any reservation of right to sue on his own claim. The reasons for this holding are set out in the Mensing case, and it would be a needless waste of space to repeat them here. To the list of authorities from other

jurisdictions there cited should be added Graves Truck Line, Inc., v. Home Oil Co., Inc., 180 Kan. 594, 305 P.2d 1053, and England v. Yellow Transit Co., 240 Mo. App. 968, 225 S.W.2d 366.

A comparison of the releases in this case and the Mensing case shows them to have been substantially the same. In the Mensing case, Mensing paid Sturgeons $1000 for a release, and then attempted to sue for a much larger amount. The facts are the same in the case at bar except for the amounts involved. Each release recites it is in settlement of a doubtful and disputed claim, and the payment made is not to be construed as an admission of liability on the part of the releasee, who denies liability. Exhibit "B", the release in the case at bar, contains language somewhat less favorable to the releasee than did the one in Mensing's case. It says: "that said releasees * * * intend merely to avoid litigation and buy their peace."

III. The factual situation here is for all practical purposes identical with that considered in the Mensing case. It cannot fairly be distinguished; we must overrule Division II of Mensing or follow it. The holding there is in line with authority in other jurisdictions and with sound reasoning. We reaffirm it; and in so doing inevitably arrive at the conclusion that the trial court must be reversed. In view of the argument of the plaintiff, however, we think it fair to consider the contentions made in his behalf which attempt to uphold the rulings made below.

The plaintiff says that the question must be resolved in the light of the intention of the parties in making the settlement and release Exhibit "B" above. With this we agree. We so said in the Mensing case. See page 929 of 250 Iowa, page 150 of 97 N.W.2d. But we must judge the intent of the parties by what they did and said, rather than by some secret, undisclosed intention they may have had in mind, or which occurred to them later. The plaintiff stresses the contention that he meant only to satisfy the claim of the defendant so that he would come within the provisions of Code chapter 321A, supra, particularly section 321A.6, paragraph 4, which says that the requirements as to security shall not apply "If * * * there shall be filed with the commissioner evidence satisfactory to him that the person

who would otherwise have to file security has been released from liability * * *."

But here the plaintiff confuses intent with the reason for forming the intent. We are concerned with the fact of settlement, not with plaintiff's motive for making it. The release, as we have pointed out, says he intended to avoid litigation and buy his peace. All settlements are made for some reason. It may be because the party making the payment feels he is legally liable, as plaintiff's attorney evidently thought he was in this case. It may be that he wishes to avoid employing attorneys, or spending time in court, or taking the risk of a larger judgment than the amount for which settlement can be made, or as plaintiff here contends, to avoid the provisions of the Financial Responsibility Act. Mr. Oeth's negotiations with the defendant's agents were on the basis of a settlement of the claim against his client, and such a settlement was reached. No reservation of a right to proceed against the defendant on plaintiff's own claim was made. The release from defendant was bargained for, made and accepted. Its validity is not questioned. The plaintiff cannot now be heard to say that he had an undisclosed intention to reserve the right to maintain his own cause of action. As we said in Mensing's case, page 930 of 250 Iowa, pages 151, 152 of 97 N.W.2d, if he in fact intended to settle with the defendant for a comparatively small amount so that he could then sue for a much larger sum, fair dealing required that he should have made it known. We do not overlook the fact that there is some evidence that an agent of the defendant at one time advised him he might lose his right to operate his automobile. This, again, may have been a reason, or the reason, why he chose to settle; but there is nothing in the course of the negotiations between plaintiff's attorney and the defendant that showed any reservation of a right to sue; that plaintiff or his attorney at any time said in express terms or by fair implication: "We are making this settlement with the sole intent of avoiding the loss of our right to operate a motor vehicle and we reserve our right to bring action against you for our own damages."

IV. The plaintiff further urges that the fact that the defendant asked, and received, a release of plaintiff's claim against him shows that the release from defendant to plaintiff

was not intended to be a settlement of the plaintiff's cause of action. There is evidence of such demand, and that the plaintiff and his wife did, in fact, execute a release to the defendant. It seems to have been a part of the negotiations between Mr. Oeth and the defendant's representatives. The release from Hughes to Brown was dated August 2, 1956; from Brown and wife to Hughes, September 20 of the same year. The latter release appears in the record as Exhibit "A". It appears that after the release Exhibit "B" was executed and the agreed sum of $300 paid over, through Mr. Oeth, the defendant's agents called the latter's attention to the fact that a release from Brown and wife was a part of the arrangement; and Mr. Oeth then procured it without objection from anyone. Exhibit "A" was challenged by the plaintiff as having been executed while he was unable to understand its terms and meaning; upon trial to a jury it was held invalid, and no appeal from this decision has been made. So this release is not binding upon the plaintiff.

But we think the fact the defendant expected to receive the release from the plaintiff has a logical meaning the exact opposite of that for which plaintiff contends. The release, Exhibit "A", was made for a recited "One Dollar and Other Valuable Consideration." According to the record no consideration was actually paid, with one exception inherent in the entire transaction. It seems evident beyond fair argument that the defendant considered the entire matter settled when he made the settlement with the plaintiff, received the agreed moneys, and executed his release. He felt he was entitled to a release from plaintiff; not because of any payment he had made to the latter, but because of the accord and satisfaction evidenced by the payment to him and the release to the plaintiff. He felt plaintiff's claim was thereby eliminated; and Mr. Oeth, plaintiff's attorney, who handled the settlement, apparently agreed. He made no objection when a release from plaintiff was requested, without additional consideration, but proceeded to secure it. It has been adjudicated that plaintiff signed Exhibit "A" without understanding it; but at least his attorney understood it and must have considered the entire matter of claims and cross-claims settled, and that the defendant was entitled to further evidence thereof in the form of a release from Brown.

It must be remembered that at the time these transactions were had, the Mensing case had not been decided. There was no exact holding in Iowa such as Mensing's case now announces. It is understandable that the defendant wished evidence of the release of plaintiff's claim; and it is further clear that he considered the entire matter settled when he received a payment in settlement of his own claim, that plaintiff's demands were satisfied, and he was entitled to a full release. His belief that the entire matter was closed with the settlement of his own damages is demonstrated, rather than denied, by his request for evidence thereof in the form of a release from plaintiff without the payment of any further consideration on his part.

The plaintiff cites cases holding that an accord and satisfaction is always governed by the intent of the parties. This is the law; but the intent must be disclosed. The cases cited do not reach the question before us here. Many of them were considered in the Mensing case, and found not in point on the facts. What we held in Mensing's case, on a factual situation identical with the one before us in the case at bar, was that the intent appeared without dispute and as a matter of law.

Some of the governing authorities cited in Mensing's case, and here, place their decision upon the ground of an accord and satisfaction; others hold the releasee who has paid the adverse claim without reservation of right to sue on his own demand is estopped from bringing an action. Both grounds are sound, and apply in the case at bar.

V. We do not reach the other errors assigned by the defendant, since our holding above indicated disposes of the case. In fairness to Mr. Oeth, plaintiff's first attorney, it should be said that there is no question of his entire good faith in the matter, or that he thought he was acting in accord with his client's wishes and for his best interest. He considered, after hearing the plaintiff's account of the accident, that it was probable he was at fault. A review of the evidence shows there was a considerable basis for this conclusion, although the jury found otherwise. But it was a determination which a competent lawyer, interested in advising his client for his best advantage, should not be criticized for reaching.

The cause is reversed and remanded, with directions to dismiss plaintiff's cause of action.—Reversed and remanded, with directions.

All JUSTICES concur.